1
2
3
4
5              UNITED STATES DISTRICT COURT

6             EASTERN DISTRICT OF WASHINGTON

7   NEWMONT USA LIMITED and DAWN
8   MINING CO.,
                                              NO. CV-09-33-JLQ
9              Plaintiffs,

10                                            **MEMORANDUM OPINION;
                                              ORDER GRANTING MOTIONS
11                                            FOR JOINDER; DENYING
                                              DEFENDANTS' MOTIONS TO
12      vs.                                   DISMISS, TRANSFER, OR STAY**

13
14  AMERICAN HOME ASSURANCE CO.,
    et al.,
15             Defendants.

16          This matter came before the court on two separate, but largely parallel defense

17  Motions to Dismiss, Transfer, or Stay the case (Ct. Recs. 73, 85).  Defendants Pacific

18  Indemnity Co. and Federal Insurance Co. filed the first motion to dismiss, but have

19  since settled and are no longer pursuing the motion.  Also before the court are two

20  separate defense motions to join (Ct. Recs. 74, 93) in the first filed motion to dismiss.

21  Seven defendants have also filed Notices of Joinder in Pacific Indemnity's Motion to

22  Dismiss, Transfer or Stay.[1]  Plaintiffs oppose all motions and joinders.

23
24  _____

25      [1]  Allstate (Ct. Rec. 79); Fireman's Fund (Ct. Rec. 80); Traveler's Casualty (Ct.

26  Rec. 81); Century Indemnity Co. (Ct. Rec. 81); Century Indemnity Co. (Ct. Rec. 83);

27  Appalachian (Ct. Rec. 90); and Great American (Ct. Rec. 97).

28  ORDER - 1

On May 29, 2009, the court heard telephonic argument. A list of counsel participating in the hearing is set forth in the court clerk's minute entry at Ct. Rec. 158. The following Order is intended to memorialize and supplement the oral rulings of the court.

## I.    BACKGROUND

In January 2005, the Environmental Protection Agency ("EPA") commenced a CERCLA action in this court (CV-05-020-JLQ) against Newmont Mining Corporation (and its successor Newmont U.S.A. Limited) ("Newmont") and Dawn Mining Company ("Dawn") relating to some of the environmental cleanup costs in connection with uranium mining operations at the Midnite Mine on the Spokane Indian Reservation near Ford, Washington. After trial, this court entered its Findings of Fact and Conclusions of Law ©. R. 514) on October 17, 2008, ruling that the United States, Newmont USA Limited and Dawn Mining Company were each liable for the cleanup costs therein at issue.

On December 31, 2008, Newmont and Dawn commenced this litigation filing it originally in Spokane Superior Court, Cause No. 08-2-05735-1. On February 4, 2009, Defendants removed the case to this court pursuant to 28 U.S.C. § § 1441 et seq., based on diversity of citizenship. In this action, Plaintiffs Newmont and Dawn seek adjudication of the insurance coverage obligations owed by the defendant insurers, for claims related to the Midnite Mine site and related litigation. Plaintiffs have also asserted bad faith handling of the claims and other statutory claims against the Defendants.

Prior to the filing of this action, on May 7, 2008, Defendants OneBeacon, Seaton and Stonewall insurance companies ("the New York plaintiffs") filed a declaratory judgment action in the Supreme Court of the State of New York, New York county, styled as *OneBeacon Insurance Company, et al., v. Newmont Mining Corporation, et al..* They named Newmont and Dawn as Defendants, as well as all of

ORDER - 2

the insurers known by the New York Plaintiffs to have issued general liability insurance policies to Newmont and Dawn.  The Amended Complaint filed in August 2008 in the New York state action seeks declaratory judgment as to who is responsible for insurance claims relating to: 1) the Midnite Mine; 2) the Dawn Mill (near the Midnite Mine site); and 3) the Gray Eagle Copper Mine near Happy Camp, California. Specifically, the suit seeks to have decided the responsibility of Newmont and the appropriate apportionment among the insurers, for amounts paid (or to be paid) in the defense of the underlying claims and to satisfy the judgments and settlements pertaining to these sites.  All of the New York Defendant insurers have answered the New York Plaintiffs' amended complaint.  Some of them have cross-claimed against Newmont seeking declarations as to coverage questions concerning contaminated sites other than the three in the New York amended complaint.

In September 2008, Newmont and Dawn filed a motion to dismiss on the grounds that the New York court could not exercise long-arm jurisdiction over Dawn and forum non-conveniens.  Newmont is a Delaware corporation formerly having its principal place of business in New York, New York.  Newmont moved its principal place of business between 1989 and April 1991 to Denver, Colorado.  Dawn is a majority owned subsidiary of Newmont and a Washington corporation which has operated exclusively in Washington.  Between 1952 and 1984, Newmont purchased insurance policies for its own benefit as well as that of its subsidiaries, including Dawn.  Those policies were delivered to Newmont in New York, where it was headquartered at the time.  Oral argument on Newmont and Dawn's challenge in the New York action to the New York state forum was held in January 2009.

On March 16, 2009, prior to the New York court's ruling on the motion, certain Defendant insurers filed separate but largely parallel motions challenging the propriety of this action commenced in Washington state.  Defendants move to dismiss this action contending that dismissal is called for under (1) the first to file rule and this

ORDER - 3

court's inherent authority to manage its docket; and (2) the doctrine of *forum non conveniens*. Alternatively, they seek to transfer this action pursuant to 28 U.S.C. § 1404(a) to the Southern District of New York, or stay this action on the grounds that the New York action was filed first.

On May 15, 2009 (after briefing herein was already complete), Hon. Charles E. Ramos issued a thorough opinion granting the dismissal of Dawn, ruling that New York courts did not have long-arm jurisdiction over Dawn. The court denied Newmont's motion to dismiss on the basis of forum non-conveniens.

## II. ANALYSIS

### A.    Motions for Joinder

Twelve Defendant insurers have either moved to join in the motion to dismiss in the matter *sub judice* or filed notices of joinder. Newmont and Dawn have filed an "opposition and response to all joinders," therein arguing that Allstate, Appalachian, Fireman's Fund and Great American have forever waived any right to bring a motion to dismiss or challenge venue, because they didn't raise it at "their first available opportunity" when they filed their Answers. See Fed.R.Civ.P. 12(h) (stating "[a] party waives any defense listed in Rule 12(b)(2)-(5) by ... failing to ... include it in a responsive pleading ..."). Defendants are not precluded from joinder based upon Fed.R.Civ.P 12(h). The motion before the court is not a motion for change a venue under 28 U.S.C. § 1391, but rather seeks dismissal/transfer/stay based upon 1) the first to file rule, 2) forum non conveniens and 3) 28 U.S.C. § 1404(a). None of these bases are articulated in FRCP 12(h). Whether the court should dismiss on these grounds is a discretionary decision which can be made at any time.

Defendants are accordingly permitted to join and Defendants' Motions to Join (Ct. Recs. 74 and 93) are **GRANTED**.

### B.    First to File Rule

Defendants move for dismissal of this action based upon the so-called "first to

ORDER - 4

file rule," arguing the earlier filed New York state action should take priority over the later filed federal action involving the same issues. The "first to file rule" is a recognized doctrine of *federal* comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. *Church of Scientology of California v. United States Department of the Army*, 611 F.2d 738, 749 (9th Cir. 1979).   Application of the rule usually dictates that the first action filed takes priority unless special circumstances (e.g., forum shopping, strong state interests) justify an alternative remedy.  As Newmont and Dawn have pointed out, however, the first to file priority presumption has evolved from and is applied in cases involving intra-federal conflicts between federal district courts of concurrent jurisdiction.  The "first to file rule" is not necessarily the guidepost for the setting here, where parallel litigation is pending in federal and state courts.  The reason for this guide is that federal law distinguishes state-federal duplication from simultaneous federal litigation.

> Generally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation.

*Colorado River Water Conservation Dist. No. 7 v. United States*, 424 U.S. 800, 817 (1976) (emphasis added)(citations omitted).

The Supreme Court has in fact repeatedly held that the pendency of an action in a state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction.  *See e.g., Exxon Mobil v. Saudi Basic Industries Corp*, 544 U.S. 280, 293 (2005); *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)).  The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action. *See, e.g., McClellan v. Carland*, 217 U.S. 268, 282,

ORDER - 5

30 S.Ct. 501, 504-505, 54 L.Ed. 762 (1910); *Stanton v. Embrey*, 93 U.S. 548, 554, 23 L.Ed. 983 (1877). Considerations of comity and federalism generally preclude one court from compelling the second to abdicate jurisdiction. *See Donovan v. City of Dallas*, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) (state court may not enjoin in personam federal court proceedings); 28 U.S.C. § 2283 (1976) (prohibiting federal courts from enjoining state court proceedings except under narrowly drawn circumstances).

A prior filed state court action does not necessarily have priority over a later filed suit in a federal forum. Accordingly, the sequence of suit does not mandate dismissal of the action.

**C. Forum Non Conveniens Dismissal or Transfer under 28 U.S.C. § 1404**

Defendants urge the court to dismiss this action pursuant to the doctrine of forum non conveniens. Under that common law doctrine, a district court may decline to exercise its jurisdiction, even though the court has jurisdiction and the venue is proper, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-50, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

The Supreme Court has clarified that the doctrine of forum non conveniens is of limited application since the 1948 enactment of Section 1404. *American Dredging Co. v. Miller*, 510 U.S. 443, 449 n. 2 (1994) (stating that as a consequence of the enactment of Section 1404, "the federal doctrine of forum non conveniens has continuing application only in cases where the alternative forum is abroad"). Transfers from one federal district to another are now governed exclusively by Section 1404 (where venue was proper in the transferor district) and Section 1406 (where the transferor court lacked venue). The doctrine applies "only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. v. Malaysia Int'l*

ORDER - 6

1  *Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184, 1190, 167 L.Ed.2d 15 (2007)

2  (citation omitted).

3      Insofar as Defendants contend that the more convenient forum is a state court,

4  the doctrine might possibly have some continuing applicability.   14D Wright et al.,

5  Federal Practice and Procedure § 3828, at p. 621-22 & n. 9 (3d ed. 2007) (stating that

6  doctrine now applies only "perhaps, under rare circumstances, [where the more

7  convenient] forum is a state court" or abroad); *Brice v. C.R. England, Inc*., 278

8  F.Supp.2d 487, 489-90 (E.D.Pa. 2003) (dismissing on basis of forum non conveniens

9  where Ohio state court provided adequate and more convenient forum). *But see Wade

10  v. Isisabvik College*, 2005 WL 2340710, *4 (D.Alaska Sept. 20, 2005) (applying

11  American *Dredging Co. v. Miller* to reject forum non conveniens where proposed

12  more convenient forum was state court) .

13      Defendants bear the burden of persuasion in proving all elements necessary for

14  the court to dismiss a claim based on forum non conveniens. This determination is

15  committed to the sound discretion of the district court.  A court may grant a motion to

16  dismiss on forum non conveniens if the moving party shows (1) that there is an

17  adequate alternative forum and (2) that the balance of private and public interest

18  factors favor dismissal.  The private interest factors include (1) the relative ease of

19  access to sources of proof; (2) the availability of compulsory process; and (3) practical

20  issues "that make trial of a case easy, expeditious, and inexpensive." *Piper Aircraft*,

21  454 U.S. at 241 n. 6. Public interest factors include (1) judicial efficiency; (2) local

22  interest in having local controversies decided at home; (3) the unfairness of burdening

23  citizens in an unrelated forum with jury duty; and (4) the interest in having the trial of

24  a diversity case in a forum that is at home with the law that must govern the action. *Id.*

25  There is a strong presumption in favor of a domestic plaintiff's choice of forum, which

26  can be overcome only when the private and public interest factors clearly point

27  towards trial in the alternative forum. *Piper Aircraft*, 454 U.S. at 253-57, 102 S.Ct.

28  ORDER - 7

252; *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) "Forum non conveniens is 'an exceptional tool to be employed sparingly, [not a] ... doctrine that compels plaintiffs to choose the optimal forum for their claim.' " *Dole Food*, 303 F.3d at 1118 (9th Cir. 2002) (*quoting Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983)).

A defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum. When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor "applies with less force," for the assumption that the chosen forum is appropriate is in such cases "less reasonable." *Piper Aircraft*, 454 U.S. at 255-256, 102 S.Ct. 252.  In addition, at least one court has noted "defendants also may move for dismissal under the doctrine of forum non conveniens not because of genuine concern with convenience but because of similar forum-shopping reasons," and, therefore, that district courts should "arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum." *Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001).   The degree of deference owed to the plaintiffs choice of forum is influenced by the degree to which it appears plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid.  *Id.*

The New York court's dismissal of Dawn for lack of jurisdiction forecloses a dismissal of the Complaint herein because Defendants are unable to prove that an alternative forum exists.  Although Newmont is subject to the jurisdiction of the courts of New York, there has been no evidence presented arguing or demonstrating the claims asserted jointly by Newmont and Dawn can or should be parsed.

In addition, the court finds that none of the public and private factors suggest a "genuine inconvenience" and a "clear preferability" for the New York state forum. The private factors address practical concerns facing the parties and the court in

ORDER - 8

resolving the dispute.  While each party argues that it will be inconvenienced by the need to litigate in the other forum, neither demonstrates any compelling or unusual difficulties.  With the exception of Dawn, the litigants here are corporations which do business nationwide and face litigation in many states.  Likewise the witnesses in the case stem from all over the nation, and are not clustered in or around one area, either New York or Washington. Convenience is not a factor here, where air travel, express mail, electronic data transmission, and videotaped depositions are part of the normal course of business for companies such as these.

By far, the most significant factor here is the public factor concerning judicial efficiency and the court's responsibility to discourage duplicative and piecemeal litigation. "[T]he avoidance of piecemeal litigation should be given great weight in the context of declaratory judgment actions because such litigation would complicate and fragment the trial of cases and cause friction between state and federal courts." *Lumbermens Mutual Casualty Co. v. Connecticut Bank & Trust Co.*, 806 F.2d 411, 414 (2d Cir. 1986).  Defendants' overriding concern expressed throughout their briefing has been the desire for comprehensive resolution to the coverage issues involving Plaintiffs.  However, given Judge Ramos' decision dismissing Dawn, the New York state action can not be considered the more "comprehensive" action.  Whereas the respective liabilities of all the parties can not be determined in New York, they can in Washington.  Moreover, this court will not rest its decision upon the speculation of the insurers  that Judge Ramos' thorough and well-reasoned decision rejecting jurisdiction over Dawn will be eventually overturned or changed.  Finally, while the New York state complaint asserts claims broader in scope than the narrower Midnite Mine issues raised in the Plaintiffs complaint herein, Defendants' responsive pleadings will likely have the effect of broadening the scope of this proceeding as well.

Arming itself with the "appropriate degree of skepticism", the court also can not

ORDER - 9

ignore the circumstances under which the New York declaratory judgment action was filed.  In May 2008, Newmont and Dawn were preparing for trial in the CERCLA case regarding the Midnite Mine.  Yet, the New York filed action sought to resolve coverage questions regarding the yet unresolved Midnite Mine dispute.  At least as to coverage issues surrounding the Midnite Mine litigation, the New York state action was in that sense anticipatory.  The court is also well aware that strategic considerations regarding choice of forum and choice of law frequently inform insurance coverage litigation decisions.   Facing the potential for coverage litigation in a forum they consider less advantageous to their position, insurers sometimes file an anticipatory lawsuit in the forum of their choice.  These actions often involve more parties, so that the action arguably is more "comprehensive".  However, a system that permits a party to gain from anticipatory filing increases the burden on all courts as parties rush to file suits in their home districts rather than attempting to resolve conflict.  Actions which seek declaratory judgment are also more indicative of a preemptive strike.  The importance of discouraging anticipatory litigation is widely recognized.

Defendants have not demonstrated that either the convenience of the parties and the court, or the interests of justice demand that this action be tried in the New York state forum.  Likewise, Defendants have not demonstrated that the federal district court in the Southern District of New York is a decidedly more convenient or appropriate forum for this action. Under 28 U .S.C. § 1404(a), a court may transfer any civil matter to any other district where 1) the action "might have been brought" and 2) the transfer facilitates the "convenience of parties and witnesses," and is "in the interest of justice." 28 U.S.C. § 1404(a).  Neither of the two statutory requirements have been demonstrated by Defendants., given the lack of jurisdiction over Dawn in New York courts, either state or federal.

The facts here neither dictate a dismissal of the action under the doctrine of

ORDER - 10

forum non conveniens or a transfer to the Southern District of New York under § 1404.

**E.    Motion to Stay**

The final issue is whether this court should stay the proceedings pending adjudication of the New York state action against Newmont, but without Dawn. "[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). "The exertion of this power calls for the exercise of sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

Though Defendants have not argued abstention as a basis for a stay or dismissal of the case, the law of abstention necessarily informs the court as to whether it *ought* to defer to the state court proceedings in exercising its inherent authority to manage its docket.  It is a rare instance in which federal courts refrain from exercising jurisdiction over a case properly pending in federal court. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a Federal District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court noted that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." Under the standard articulated in *Colorado River*, a federal court should only abstain from a case in which there are parallel state proceedings for "exceptional circumstances." *Id.* at 813, 96 S.Ct. 1236 (*quoting County of Allegheny*, 360 U.S. at 188-89, 79 S.Ct. 1060). The authority of a federal court to stay or dismiss an action out of deference to a parallel action in state court is discretionary and appropriate only

ORDER - 11

in "exceptional circumstances." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983). The task of federal courts "is not to find some substantial reason for the exercise of federal jurisdiction ...; rather, the task is to ascertain whether there exist " 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Id*. at 25 (emphases in original).

The court does not find that *Colorado River* deference is called for here where the state court lacks jurisdiction over one party and its claims.  If some of the claims are not subject to review in the state forum, the proceedings are not "parallel" and there is therefore no basis for abstention.  *See e.g. Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37 (3rd Cir.1980) (holding deference under *Colorado River* inappropriate when the two proceedings are not "truly duplicative").  The same conclusion is dictated by the abstention principles articulated in *Brillhart*.  *Brillhart v. Excess Ins. Co.* 316 US 491, 495 (1942)(the parallel state court proceeding must present "the same issues, not governed by federal law, between the <u>same parties</u>," and the court must evaluate "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, <u>whether such parties are amenable to process in that proceeding</u>, etc.").

Defendants argue proceeding on "both coasts" is "impractical and unduly burdensome."  Ct. Rec. 75 at 16. The court is exceedingly mindful of the policy considerations that multiplicity of suits should be avoided and scarce judicial resources conserved.  But where the state court is unable to resolve the entire matter, it would seem to conserve judicial effort and save expense of the parties to dispose of the entire controversy in this federal court where all parties are amenable to service. *See Andrea Theatres*, 787 F.2d 59, 62 (2nd Cir 1986)("Absent broad state court jurisdiction that would enable the state court to dispose of the entire matter, including the issues before the federal court, abstention could hardly be justified on grounds of

ORDER - 12

1  'wise judicial administration, giving regard to conservation of judicial resources and

2  comprehensive disposition of litigation.' ") (quoting *Co. River*, 424 U.S. at 817).

3  **V. Conclusion**

4      For the foregoing reasons, Defendants' Motions to Dismiss, Transfer or Stay

5  (Ct. Rec. 73 and 85) are **DENIED**.   Defendants' Motions to Join (Ct. Recs. 74 and

6  93) are **GRANTED**.

7      **IT IS SO ORDERED.**

8      The Clerk shall enter this Order and forward copies to counsel.

9      Dated June 21, 2009.

10                        s/ Justin L. Quackenbush
                          JUSTIN L. QUACKENBUSH
11              SENIOR UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  ORDER - 13