1
2
3
4

UNITED STATES DISTRICT COURT

5

EASTERN DISTRICT OF WASHINGTON

6
7

8  NEWMONT USA LIMITED and DAWN
   MINING CO.,
9
            Plaintiff,                          NO. CV-09-033-JLQ
10
   vs.                                          **ORDER DENYING IN PART AND**
11                                              **GRANTING IN PART**
                                                **PLAINTIFFS' MOTION FOR**
12 AMERICAN HOME ASSURANCE CO., et              **PARTIAL SUMMARY**
   al.,                                         **JUDGMENT**
13
            Defendants.
14

15       On October 16, 2009 the court heard telephonic argument on Plaintiffs' Motion for

16 Partial Summary Judgment (Ct. Rec. 160).  Plaintiffs sought summary judgment that

17 three Defendant insurers breached their duty to defend and that such breaches were in bad

18 faith and violated the Consumer Protection Act.  The motion pertains to three Defendant

19 insurance carriers: Continental, OneBeacon, and Insurance Company of North America

20 (INA). Participating and arguing at the hearing were: Andrew Petrie, on behalf of

21 Plaintiffs; Pamela Lang on behalf of INA; Lawrence Gottlieb on behalf of Continental;

22 and Ralph Luongo on behalf of OneBeacon.  Other counsel appearing were  Sarah

23 Wallace, Beverly Anderson, Michael Baughman, Misty Edmondsen, Brian Walsh, Brad

24 Smith, Ralph Luongo, Elaine Klinger, Martin Pujolar, Don Kunze, Thomas James,

25 Jonathan Kranz, Melissa White, and David Prange.  The following is intended to

26 memorialize and supplement the oral rulings of the court.

27 ///

28

ORDER - 1

1  **I. FACTS**

2  **A.    ALLEGATIONS IN THE UNDERLYING CERCLA LITIGATION**

3       In January 2005, the United States Environmental Protection Agency filed an

4  action in this court against Plaintiffs under the Comprehensive Environmental Response

5  Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq*. ("CERCLA")[*United States*

6  *of America v. Newmont USA Ltd., et al,* No. CV-05-020-JLQ, 2008 WL 4621566

7  (E.D.Wash. Oct. 17, 2008).  Proof of service was not filed until after the filing of an

8  Amended Complaint on May 20, 2005, after which waivers of service of process were

9  filed by Newmont and Dawn.   It is undisputed the EPA's Complaint against Newmont

10 and Dawn alleged they were responsible for a release of pollutants associated with the

11 Midnite Mine uranium mine located near Ford, Washington.  It is also undisputed that the

12 Complaint filed by the EPA did not include specific facts regarding alleged discharges.

13 Ct. Rec. 187 at 23.  The Amended Complaint stated at ¶ 9:

14        "The Site is an inactive open-pit uranium mine, which includes four pits back-
       filled with waste-rock, two open pits, waste rock and uranium protore piles.

15        Mining activities at the Site disturbed approximately 320 acres.  Mining activities
       at the Site have resulted in elevated levels of metals and radionuclides in soils,

16        sediments, surface water and groundwater including within the drainage, surface,
       and sediments of Blue Creek, which flows into the Spokane River arm of Lake

17        Roosevelt."

18 Cause No. 05-CV-020, Ct. Rec. 3.  At ¶ 14, it stated: "There have been and continue to be

19 'releases' or 'substantial threats of releases' of such hazardous substances or pollutants or

20 contaminants into the environment in and around the Site..."  *Id*. at ¶ 14.  "Materials

21 located at the Site include 'hazardous substances' and/or 'pollutants or contaminants

22 which may present an imminent and substantial danger to the public health or welfare'..."

23 *Id*. at ¶ 13.

24      The court conducted a bench trial of the CERCLA action and on October 17, 2008,

25 entered a 101 page decision declaring Newmont and Dawn, in conjunction with the

26 United States, liable for cleanup costs totaling many millions of dollars in the remediation

27 of the Midnite Mine site.

28 ///

ORDER - 2

**B.    THE INSURANCE POLICIES**

　　1.    One Beacon (Umbrella Insurance Policy)

OneBeacon policy no. E 60003 was issued (by "Employers' Surplus Lines Insurance")  to Newmont Mining Corporation and provided $5 million in umbrella coverage for the period of July 1, 1969 to July 1, 1972.  Dawn Mining is also a named insured on the policy.  Prouty Decl., Ex 1 at 24.  The policy under the section entitled "I. Coverage" provides that OneBeacon will:

> [I]ndemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability
> (a) imposed upon the Assured by law; or
> (b) assumed coverage for all sums by the Named Assured...for damages, direct or consequential and expenses, all as more fully defined by the term "ultimate net loss" on account of
> (I) Personal Injuries, including death at any time resulting therefrom;
> (ii) Property Damage,
> (iii) Advertising Liability,
> caused by or arising out of each occurrence happening anywhere in the world.

Prouty Decl., Ex. 1 at 42.

The policy defines "ultimate net loss" to mean:

> [T]he total sum which the Assured, or any company as his insurer, or both, become obligated to pay by reason of...property damage,...either through adjudication or compromise, and shall also include...all sums paid as...fees, charges and law costs...and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder....

*Id.*

The policy defines "occurrence" to mean "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage, or advertising liability during the Certificate period..."  *Id.*

In Section II, entitled "Limit of Liability" the policy essentially provided that the insurer "shall only be liable for the ultimate net loss which is the excess of either (a) the limits of the underlying insurances as set out in the Schedule in respect of each occurrence covered by said underlying insurances..."; or (b) the deductible [$10,000], "ultimate net loss respect of each occurrence not covered by said underlying insurances."

ORDER - 3

The policy further provided that in the event of "exhaustion of the aggregate limits of liability under said underlying insurances by reason of losses paid thereunder," "this Certificate shall...continue in force as underlying insurance."  Id.

The OneBeacon policy also states certain "conditions."  One of them is under the heading "Assistance and Co-operation", which provides:

> The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters shall co-operate in all things in the defense of such claim, suit or proceeding.

Id. at 43.

Plaintiff claims the underlying insurance policy to which the OneBeacon policy refers is Pacific policy no. LAC 164801, which has a per-occurrence policy limit of $500,000.  Pacific's policy provided primary coverage for the original term of September 15, 1964 to September 15, 1967, but was subsequently renewed with endorsement, the last annual policy period effective July 1, 1970.  Id. at Ex. 2 at 47 (original term), 158 (endorsement regarding premium payment effective July 1, 1970).  It is not clear whether this policy expired in 1971 and there was no underlying insurance for the annual period of 1971 to 1972.   Plaintiff admits the absence of exhaustion of the policy limits for the July 1971-July 1972 annual policy period.  Ct. Rec. 187 at 19.

> The Pacific policy provides that Pacific shall:
> (a)    defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent...
> ....
> The amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the Company in addition to the applicable limit of liability of this Policy.

Prouty Decl., Ex. 2 at 48.

Plaintiffs declare through its Statement of Facts and the Prouty Declaration at ¶ 7 that the Pacific policy limits have been exhausted.  Defendants dispute this statement.. Plaintiffs/Prouty do not offer any other evidence to support this statement made in Mr.

ORDER - 4

1  Prouty's declaration.  OneBeacon also claims that there are at least two additional Pacific

2  Indemnity policies, at least one of which may be the primary policy that replaced the

3  policy no. LAC 164801 when it expired.  Plaintiffs have not supplied the court with these

4  apparent policies, or apparently produced them to defendants.  OneBeacon SOF, ¶ 7.

5          2. Continental

6          Continental (as successor to Harbor Insurance Company ("Harbor")) issued a

7  primary insurance policy, no. GLA 010076, to Newmont Mining Corp. providing

8  coverage for the period of April 1, 1975-1976, then another policy no. GLA 010441 for

9  the period April 1 1976 to April 1, 1977.  Prouty Decl., Ex. 3 at 163, 4 at 204. Both

10  policies provide:

11          [T]he Company shall have the right and duty to defend any suit against the **insured**
            seeking damages on account of such **bodily injury** or **property damage**, even if
12          any of the allegations of the suit are groundless, false, or fraudulent, ...but the
            company shall not be obligated to pay any claim or judgment or to defend any suit
13          after the applicable limit of the company's liability has been exhausted by payment
            of judgments or settlements.
14
15  *Id.* at Ex. 3 at 165, Ex. 4 at 205 (bold in original).

16          The policies also both contain pollution exclusions providing:

17          Exclusions

18          This Insurance does not apply:

            ....
19          (f)     to bodily injury or property damage arising out of the discharge, dispersal,
                    release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic
20                  chemicals, liquids or gases, waste materials or other irritants, contaminants
                    or pollutants into or upon land, the atmosphere or any water course or body
21                  of water; but this exclusion does not apply If such discharge, dispersal,
                    release or escape is sudden and accidental.

22  *Id.*

23          3.      Insurance Company of North America (3 primary policies)

24          INA issued three policies to Newmont Mining Corporation providing coverage

25  from July 18, 1980 - July 18, 1985 (policy nos. SCG-1406, SCG-G0-002765-0, SCG-

26  GO-209325).  Prouty Decl., Ex 5, 6, 7. All three policies contain the following language

27  in the insurance agreement portion of the policy:

28          The Company will pay on behalf of the Insured all sums which the Insured shall
            become legally obligated t opay as damages because of:

ORDER - 5

> A. bodily injury or
> B. property damage
> to which this insurance applies, caused by an occurrence and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent, ...but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Prouty Decl., Ex. 5 at 236, Ex. 6 at 268, Ex. 7 at 298.

All three policies have pollution exclusions as well. These provisions state that the insurance does not apply to:

> (f)    to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

An "occurrence" means an "accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured."

"Property damage" means:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

The policies also provide that "If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative."

With respect to personal injury coverage (PIL) and the duty to defend, all three policies provide coverage for "offenses committed in the conduct of the Named Insured's business," including "wrongful entry or eviction, or other invasion of the right of private occupancy."  The PIL insuring agreement section contains the same duty to defend clause as the insuring agreement (above) contains.

## C.    COMMUNICATION BETWEEN PLAINTIFFS AND CARRIERS

ORDER - 6

In December 1997, Newmont and Dawn notified the carriers of the EPA's October 6, 1997 "Request for Information" pursuant to Section 104 of CERCLA regarding the Midnite Mine site.   On May 17, 2005, Plaintiffs provided tendered defense of the action to OneBeacon, Continental and INA by letter.  The letter provided notice of the CERCLA action and requested that the insurers "fully investigate, defend, and indemnify the insureds per the conditions of the policies of coverage."  Prouty Decl., Ex. 10.  On September 16, 2005, an "Insurance coverage" meeting was held with Plaintiffs' coverage counsel.  Apparently INA and Continental attended this meeting, wherein the EPA's claims were discussed.  Another meeting was held on November 17, 2006.

Carriers such as Pacific Indemnity and Federal Insurance Company, reviewed their general liability policies and concluded that there was a potential for coverage and agreed to participate in the defense of Plaintiffs.  Prouty Decl., Ex. 11[Letter regarding policies of Pacific Indemnity and Federal Insurance Company].   Continental responded likewise.  On October 27, 2005, Continental sent Plaintiffs a letter reserving its rights and seeking information about Dawn Mining's status and information to investigate the claim. Coyle Decl., Ex. A.  The letter does not indicate whether Continental was agreeing or declining to defend the Plaintiffs.

Sometime in 2006, Continental apparently entered into negotiations with the holder of the Pacific and Federal Insurance Company policies regarding the allocation of defense costs.  On June 25, 2007, Continental sent Plaintiffs a letter indicating that it had "completed its review of the potential for coverage under the policies" and that it agreed to "participate in Dawn and Newmont's [defense] subject to confirmation that Newmont USA Limited is the same entity as Newmont Mining company...subject to a full reservation of rights."  Ct. Rec. 179 [Coyle Decl], Ex. B.(emphasis added).  In July 2007, over two years after the May 17, 2005 tender of defense, Continental sent another letter indicating it was "formally respond[ing] to" the tender of defense and agreeing to "participate" in Newmont and Dawn's defense subject to a reservation of rights under policies covering policy period 75-76 and 76-77.  Ct. Rec. 164 [Prouty Decl], Ex. 12; Ct.

ORDER - 7

Rec. 179 [Coyle Decl], Exs. A-F.  Continental declined to accept tender of defense as to excess policies for '77-'78 and '69-'72.  Newmont and Dawn interpreted this letter as an agreement to defend under a reservation of rights.

Unlike Continental, neither OneBeacon or INA responded in writing as to whether it was agreeing or declining to defend the Plaintiffs.  INA's correspondence with Plaintiffs, in 1998 and June 2005, involved letters expressing a general reservation of rights and requests for more information.  There was no mention of the duty to defend.  Correspondence from OneBeacon sent to Plaintiffs' New York attorney on March 9, 2007 acknowledged receipt of the underlying Complaint of the EPA and expressed its position that it owed no duty of *coverage* to Newmont Mining.  Ct. Rec. 173 [Luongo Decl.], Ex. B.  The letter also indicates that any such coverage would be subject to the conditions expressed in the policy. It made certain inquiries of Plaintffs' counsel, and "reserves all rights without limitation" under the OneBeacon policies.  *Id.*  The letter neither agreed nor declined to defend Plaintiffs in the CERCLA action.

Both INA and OneBeacon agree with Plaintiffs contention that they did not provide Newmont or Dawn with a defense and have not reimbursed Plaintiffs for defense costs incurred in the CERCLA action.  Continental disputes this contention, implying that it was ready and willing to reimburse Plaintiffs defense costs but that Plaintiffs did not cooperate in providing the information required for payment. Ct. Rec. 178 [Cont. Resp. to Pltfs' SOF] at 5-6.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 ©).  In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production

ORDER - 8

then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); *Kaiser Cement Corp. v. Fischbach & Moore, Inc*., 793 F.2d 1100, 1103-04 (9th Cir.), cert. denied, 479 U.S. 949, 107 S. Ct. 435, 93 L. Ed. 2d 384 (1986).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party.  *T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence the parties present must be admissible.  Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

The parties dispute whether Washington law or New York governs this diversity dispute.  They agree, however, that in a diversity action, the conflict of laws principles of the forum state govern.  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).  This issue will be discussed in further detail below.

## III.    ANALYSIS

Plaintiffs' motion requests summary judgment in their favor on the duty to defend and bad faith claims against OneBeacon, Continental, and INA.  Plaintiffs request that the court find the carriers liable for breach of contract in not honoring their duty to provide a defense and for bad faith actions and omissions in not providing that defense.  Ct. Rec. 187 at 30.  The Defendant carriers each argue they had no duty to defend by reason of the specific language of their respective policies and that Plaintiffs' bad faith claims are meritless.  Defendants contend that New York law should govern the court's interpretation of the policies herein which the parties agree, do not contain applicable

1   choice of law provisions.  Plaintiffs contend Washington law should apply though, as to

2   the issue of the duty to defend, they take the position that there is no actual conflict

3   mandating the court's choice of one state's law.

4   **A.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DUTY TO**

5         **DEFEND**

6         The elements of a breach of contract claim are: (1) the existence of a valid contract;

7   (2) a breach of a duty imposed by the contract; and (3) resultant damages.   The focus of

8   disagreement herein is on the second of these elements.  There is apparently no dispute

9   that Newmont entered into contracts for insurance with these Defendants, that Dawn was

10  an additional insured, and that Newmont and Dawn incurred defense costs in defending

11  the CERCLA action..

12        **1.**   *Breach of Contract Claim against OneBeacon*

13        OneBeacon is the only *excess* insurer against whom Plaintiffs have brought their

14  present motion. Both OneBeacon and Plaintiffs agree that choice of law is not dispositive

15  as to Plaintiffs' motion regarding the duty to defend directed at OneBeacon.

16        An excess liability insurer's duty to defend is generally defined by its own excess

17  policy.  The interpretation of an insurance policy is a question of law in which provisions

18  are given their plain and ordinary meaning. *Alaska Nat'l Ins. Co. v. Bryan*, 125

19  Wash.App. 24, 30, 104 P.3d 1 (2004); *accord White v. Continental Cas. Co.*, 9 N.Y.3d

20  264, 267, 848 N.Y.S.2d 603, 878 N.E.2d 1019 (2007).  A reading of OneBeacon's

21  insurance contract in this case reveals an express provision disavowing any duty to

22  defend, but providing OneBeacon the option and opportunity to participate in the

23  insured's defense.  Accordingly, the court finds OneBeacon did not have a duty to defend

24  Plaintiffs.

25        OneBeacon's policy provides that its policy ("certificate") and coverage is subject

26  to the limitations, terms and conditions expressed in the policy.  Ct. Rec. 164, Ex. 1.  at

27  42, 43. The policy specifically lists certain conditions, including one entitled "Assistance

28  and Co-operation," which states in pertinent part:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Underwriters *shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured* but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve Underwriters, in which event the Assured and Underwriters *shall co-operate* in all things in the defense of such claim, suit or proceeding.

*Id.* at 43 (emphasis added). This provision in unequivocal terms contractually disavows the duty to defend, but reserves the right to participate in the defense or settlement of the claim. Where an insurance policy confers a right to defend, but not an obligation to defend, the insurer's election not to take over the defense is not a breach of duty owed to the insured. *Kienle v. Flack*, 416 F.2d 693, 696 (9th Cir. 1969).

Plaintiffs argue that because the OneBeacon policy does not expressly "exclude a duty to defend when it drops down and continues as a primary policy," there is an ambiguity as to whether the Assistance and Co-operation condition applies or not in this circumstance. Plaintiffs contend the court should construe this ambiguity in their favor and in essence, view the policy as silent in regard to the duty to defend. *See e.g., Weyerhaeuser Company v. Commercial Union Insurance Company*, 142 Wn.2d 654, 690 (2000)(the duty to defend may arise where policy was silent in regard to duty to defend, it did not expressly eliminate any defense obligation, and coverage obligations of the underlying insurers are exhausted). Plaintiffs contend that once OneBeacon was required to "drop down" because the underlying insurance policy was exhausted (which is a disputed fact), it then acquired the contractual duty to defend pursuant to the terms of the underlying primary policy of Pacific Indemnity. The Limit of Liability section of OneBeacon's policy provides that in the event of exhaustion the policy would "continue in force as underlying insurance."

The court rejects the contention that OneBeacon's policy is ambiguous or should be construed as silent as to whether its Conditions apply to the circumstances here. Moreover, the "continue in force" language of the policy does not render the remaining

terms of the excess policy a nullity or suggest that its conditions are replaced by the

ORDER - 11

1  provisions of the underlying insurance.  There is no authority for such a proposition and
2  it just simply runs counter to the express and unambiguous language of the policy itself.
3        Plaintiffs' motion regarding the duty of OneBeacon to defend is **DENIED**.
4        **2.**     ***Breach of Contract Claims Against Continental and INA***
5        a.     Choice of Law
6        In suits arising under the Court's diversity jurisdiction, the court must determine
7  whether to apply the law of the forum state or the law of another state. *See Kohlrautz v.*
8  *Oilmen Participation Corp.*, 441 F.3d 827, 833 (9th Cir.2006). To make this
9  determination, the court applies the choice of law rules of the forum state.  *Id.*
10 Washington law presumptively applies. *See Erwin v. Cotter Health Ctrs.*, 161 Wash.2d
11 676, 692, 167 P.3d 1112 (2007).
12       Washington employs a two-step approach to choice of law questions. First,
13 Washington choice of law principles require the application of Washington law unless
14 there is an "actual conflict" with another applicable body of law.  *Burnside v. Simpson*
15 *Paper Co.*, 123 Wash.2d 93, 103, 864 P.2d 937 (1994). Second, if there is a conflict,
16 Washington uses a "most significant relationship" test.  *See Mulcahy v. Farmers Ins. Co.*,
17 152 Wash.2d 92, 100, 95 P.3d 313 (2004) (contract); *Rice v. Dow Chem. Co.*, 124
18 Wash.2d 205, 213, 875 P.2d 1213 (1994) (tort).  An "actual conflict" exists between
19 Washington law and the laws or interests of another state if application of the various
20 states' laws could produce diverging outcomes on the same legal issue. *Erwin*, 161
21 Wash.2d at 692, 167 P.3d 1112.
22       Choice of law is decided on an issue by issue basis. RESTATEMENT (SECOND) OF
23 CONFLICT OF LAWS § 145(1). It would be inappropriate for the court to prospectively
24 declare that either Washington or New York applies to each and every issue in this case
25 before the specific issue is identified.  With regard to the insurers' duties to defend, the
26 court agrees with Plaintiffs that the choice of law question is inconsequential, and
27 therefore the court applies the forum state's law, the law of Washington, to resolve the
28 issue.  Washington and New York have identical standards for when the duty to defend

arises, which in this case, produces an identical outcome on this particular issue.  Though disparities exist in the laws governing pollution exclusion clauses, these disparities are not *meaningful* in regards to carriers' duties to defend.

In both Washington and New York the duty to defend arises at the time an action is first brought, and is based on the existence of *conceivable coverage* or otherwise stated, the *potential* for the carrier's liability.  Both jurisdictions follow the "four corners" rule as the standard for determining when the duty to defend is triggered.  In Washington, courts have said that  an insurer's duty to defend  "arises when a complaint against the insured, construed liberally, alleges facts which could, if  proven, impose liability upon the insured within the policy's coverage." *Unigard Ins. Co. v. Leven*, 97 Wash.App. 417, 425, 983 P.2d 1155 (1999); *see also Woo v. Fireman's Fund Insurance Co*., 161 Wash.2d 43, 164 P.3d 454 (2007).

In New York, the duty to defend is triggered "when the 'four corners of the complaint' " filed against the insured "<u>suggest the reasonable possibility of coverage</u>." *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 66 (1991) (noting that New York courts "have refused to permit insurers to look beyond the complaint's allegations to avoid their obligation to defend and have held that the duty to defend exists '[i]f the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased.'"). *See also Continental Cas. Co. v. Rapid-American Corp*., 80 N.Y.2d 640, 648 (1993); *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997).   "If the complaint contains any facts or allegations which bring the claim even potentially within the protections purchased, the insurer is obligated to defend." *Technicon Elecs. v. American Home Assurance* ("Technicon II"), 74 N.Y.2d 66, 544 N.Y.S.2d 531, 533, 542 N.E.2d 1048, 1050 (Ct.App. 1989); *see also Gillette*, 486 N.Y.S.2d at 876, 476 N.E.2d at 275. Thus, the insurer is required to provide a defense to any action, however groundless, in which there exists any possibility that the insured might be held liable for damages where facts are alleged within the coverage of the policy. *See National Grange*, 650 F.Supp. at 1407-08. Indeed, New York courts have

viewed liability insurance as "litigation insurance." *Gillette*, 486 N.Y.S.2d at 876, 476 N.E.2d at 275; *National Grange*, 650 F.Supp. at 1407.

Both jurisdictions have consistently recognized that the duty to defend is a distinct obligation which is broader than the duty to indemnify. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash. 2d 654, 690, 15 P.3d 115 (2000); *accord Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984). The present motion before the court does not seek adjudication of the questions of actual liability coverage or the duty to indemnify.

So long as the claims may *potentially* fall within policy's coverage, the duty to defend is triggered, and this is so even if the language of the complaint does not adequately state all the facts requisite to trigger coverage. "A policy protects against poorly or incompletely pleaded causes as well as those artfully drafted." *Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 670, 439 N.Y.S.2d 858, 422 N.E.2d 518. If a complaint is ambiguous, both New York and Washington law provide that it shall be construed liberally in favor of triggering the insurer's duty to defend. *Woo v. Fireman's Fund Insurance Co.*, 161 Wash.2d 43, 164 P.3d 454 (2007); *Green Bus Lines, Inc. v. Consolidated Mut. Ins. Co.*, 74 A.D.2d 136, 144, 426 N.Y.S.2d 981, 987 (N.Y.A.D 1980)(citing cases). Further, even where there are extrinsic facts suggesting the claim may ultimately prove meritless or outside the policy's coverage, the insurer cannot avoid its obligation to provide a defense. While facts outside the complaint may be relied upon to *expand* an insurer's duty to defend, they may not be utilized by the insurer to deny the duty to defend. *Woo*, 164 P.3d at 459; *Durant v. North Country Adirondack Coop. Ins. Co.*, 24 A.D.3d 1165, 1166, 807 N.Y.S.2d 427 (N.Y. A.D. 2005)

Moreover, both states' policies dictate that when an insurer is in doubt as to its obligation to defend, insurers should not desert their policyholders but agree to defend under a reservation of rights. *See Truck Ins. Exchange v. Vanport Homes, Inc.* 147 Wash.2d 751, 58 P.3d 276 (Wash. 2002). "Although the insurer must bear the expense of defending the insured, by doing so under a reservation of rights and seeking a

ORDER - 14

1  declaratory judgment, the insurer avoids breaching its duty to defend and incurring the

2  potentially greater expense of defending itself from a claim of breach." *Woo*, 161

3  Wash.2d 43, 164 P.3d 454 (2007)(emphasis added).

4      In both jurisdictions, an insurer may only be relieved of its duty defend if the claim

5  alleged in the complaint is clearly <u>not</u> covered by the policy.  *Woo v. Fireman's Fund*

6  *Insurance Co.*, 161 Wash.2d 43, 164 P.3d 454 (2007); *Cle Elum Bowl, Inc. v. North Pac.*

7  *Ins. Co.*, 96 Wash.App. 698, 703, 981 P.2d 872 (1999); *Technicon II*, 544 N.Y.S.2d at

8  533, 542 N.E.2d at 1050 (no duty to defend if the insurer shows that the allegations in the

9  complaint fall completely within the policy exclusions and the allegations as a whole are

10 subject to no other interpretation).  Moreover, as New York law makes clear it is the

11 insurer who has the burden of showing that the exclusion <u>clearly and unmistakably</u>

12 <u>applies to the claims</u>. *Fed. Ins. Co. v. 1030 Fifth Ave. Corp.*, 262 A.D.2d 142, 691

13 N.Y.S.2d 498, 499 (N.Y.App.Div. 1999). To be relieved of its duty to defend on the basis

14 of a policy exclusion, the <u>insurer</u> bears a heavy burden of demonstrating that the

15 allegations of the complaint cast the pleadings wholly within the exclusion, that the

16 exclusion is subject to no other reasonable interpretation, and that there is no possible

17 legal or factual basis upon which the insurer may eventually be required to indemnify the

18 insured. *Frontier Insulation Contractors Inc.*, 667 N.Y.S.2d 982, 690 N.E.2d at 868-69.

19     Both Washington and New York law also provide that once triggered, an insured is

20 entitled to a full and complete defense from every insurer having a duty to defend.  *See*

21 *W. Pac. Ins. Co. v. Farmers Ins. Ex.*, 69 Wn.2d 11, 18, 416 P.2d 468, 472 (1966)(liability

22 insurer had "a direct contractual duty to defend its insured...,regardless of existence of

23 other insurance"); *accord Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640

24 (1993)("National may eventually have to contribute both to defense costs and to

25 indemnification.... However, the duty to defend is broader than the duty to pay, requiring

26 each insurer to defend if there is an asserted occurrence covered by its policy ..., and the

27 insured should not be denied initial recourse to a carrier merely because another carrier

28 may also be responsible ... That is the 'litigation insurance' the insured has purchased....

ORDER - 15

1    When more than one policy is triggered by a claim, pro rata sharing of defense costs may

2    be ordered, but we perceive no error or unfairness in declining to order such sharing, with

3    the understanding that the insurer may later obtain contribution from the other applicable

4    policies.").  Any contrary rule would encourage foot dragging by insurers and potentially

5    leave the insured without a prompt and proper defense.

6        b. Burden of Proof

7        As summarized above, Washington and New York's legal standards governing the

8    duty to defend are nearly identical.  With these standards in mind, the court clarifies the

9    parties' burden of proof on the issue of the duty to defend.  As the movant and insured

10   herein, Plaintiffs have the burden of coming forward with evidence showing the claims

11   alleged in the EPA's complaint could conceivably be covered by the policy.  If satisfied,

12   the insurers then have the heavy burden of demonstrating as a matter of law that the

13   claims in the complaint can be interpreted only to exclude coverage.  Thus, contrary to

14   the contentions of INA and Continental, an insurer might be called to negate the

15   applicability of the sudden and accidental exception to the pollution exclusion in order to

16   successfully demonstrate the unambiguous lack of potential for coverage.

17       *Northville Industries*, the case relied upon heavily by the Defendants, does not alter

18   this well established doctine.  *Northville Indus. Corp. v. National Union Fire Ins. Co.*, 89

19   N.Y.2d 621, 657 N.Y.S.2d 564, 679 N.E.2d 1044 (1997).  That case could easily be

20   somewhat misleading however, because, unlike this case, its procedural posture involved

21   *simultaneous* rulings on *both* the duty to defend and indemnify.   In order to demonstrate

22   that the duty to defend was triggered, Plaintiffs **are not** required to establish coverage

23   (only the *potential* for coverage), to show that "all conditions precedent were met and no

24   exclusions apply"  as contended by INA (Ct. Rec. 176 at 9), or to show that "a sudden

25   and accidental discharge in fact occurred" as contended by Continental (Ct. Rec. 177 at 2,

26   7).   In their briefs, INA and Continental conflate the distinct standards for the duties to

27   defend and indemnify.

28       For the reasons which follow, the court concludes that as a matter of law, the

allegations in the complaint could potentially be covered events and neither Continental

or INA have demonstrated the lack of legal or factual possibility of coverage.

      c.      Pollution Exclusion Clauses do Not Relieve INA and Continental of their
              Duty to Defend

      All five of the Continental and INA policies at issue in this case included broad

duty to defend clauses, as well as pollution exclusion clauses.   Each pollution exclusion

clause contains an exception in which coverage is re-triggered for "sudden and

accidental" polluting events.   The determination of the insurer's obligation to defend in

this case depends on the status of the pleadings as they were at the time the Plaintiffs

called upon the Defendants to defend in the underlying action. The EPA's claim against

the Plaintiffs asserted in the complaint was very broad.  It stated:

> "The Site is an inactive open-pit uranium mine, which includes four pits back-
> filled with waste-rock, two open pits, waste rock and uranium protore piles.
> Mining activities at the Site disturbed approximately 320 acres.  Mining activities
> at the Site have resulted in elevated levels of metals and radionuclides in soils,
> sediments, surface water and groundwater including within the drainage, surface,
> and sediments of Blue Creek, which flows into the Spokane River arm of Lake
> Roosevelt."

Cause No. 05-CV-020, Ct. Rec. 3.  "There have been and continue to be 'releases' or

'substantial threats of releases' of such hazardous substances or pollutants or

contaminants into the environment in and around the Site..." *Id*. at ¶ 14.  "Materials

located at the Site include 'hazardous substances' and/or 'pollutants or contaminants

which may present an imminent and substantial danger to the public health or welfare'..."

*Id*. at ¶ 13.

      It is undisputed that the EPA's complaint did not include any specific facts

regarding the alleged discharges or how the discharges occurred.  Rather the complaint is

couched in general terms appropriate for a CERCLA action.  The insurers concede, that

there are no specific facts pled in the EPA's complaint about the releases and "there are

no allegations of the underlying complaint that would characterize the contamination at

issue as sudden and/or accidental." Ct. Rec. 176 at 12.  Likewise, as Plaintiffs point out,

there are no allegations in the underlying complaint that would *rule out* the potential for

coverage and the possibility of facts demonstrating that the contamination at issue was

ORDER - 17

sudden and accidental. *See e.g. Mahl Brothers Oil Co., Inc. v. St. Paul Fire & Marine Ins. Co., 307 F. Supp. 2d 474, 496 (W.D. N.Y. 2004)* ("where an underlying claim does not specify how the relevant hazardous substance was discharged into the environment, such claim did not clearly negate an interpretation that such discharge was sudden and accidental" and, therefore, not encompassed by the pollution exclusion); *Valley Imp. Ass'n, Inc. v. U.S. Fidelity & Guar. Corp.*, 129 F.3d 1108, 1120 (10th Cir. 1997) (New Mexico law) ("Although the pleadings do not allege an accident, neither do they clearly indicate that the overgrazing was not the result of an accident. The claims were potentially within the coverage for property damage liability and should have been defended by USF & G"). Moreover, it does not require a strained or an unreasonable construction of the claims in the Complaint to find a potential for coverage under the sudden and accidental exception. *See e.g., Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 33 Env't. Rep. Cas. (BNA) 1340 (Colo. 1991)(holding that insurers had duty to defend where claims against mining did not contain assertions that the insured expected or intended the discharge of pollutants into the gulch as a result of its mining operations); *LaSalle Nat. Trust, N.A. v. Schaffner*, 818 F.Supp. 1161 (N.D.Ill. 1993)(finding the allegation of groundwater contamination and release of other volatile organic compounds stated potentially covered claims by exceptions in the sudden and accidental pollution exclusion policies).

The law requires the court to resolve all doubts regarding the sufficiency of the allegations to trigger coverage in favor of the insured and the duty to defend. Moreover, when an insurer is unconvinced of its duty to defend, insurers are to resolve such doubt in favor of furnishing a defense to its insured while it pursues other avenues for resolving the uncertainty. These two fundamental tenets of insurance law operate in favor of finding the insurers had a duty to defend. The broad allegations of the EPA's complaint raise doubt as to coverage, but more importantly, do not *clearly and unambiguously* preclude it. INA and Continental also knew that further uncertainty loomed over the question of coverage as their policies contained no choice of law provisions and it was

therefore unknown to them what state's law would ultimately dictate the interpretation of the policy's pollution exclusion. *See* Ct. rec. 177 at 16 (admitting the choice of law issue is debatable). As extensively discussed by the parties, the meaning attributed to the terms "sudden" and "accidental" has been the subject of massive nationwide litigation with courts diverging on the application of the terms in varying factual contexts. New York and Washington law diverge on this subject. *Compare e.g. Northville Indus. Corp. v. National Union Fire Ins. Co.*, 89 N.Y.2d 621, 657 N.Y.S.2d 564, 679 N.E.2d 1044 (1997)("sudden" connotes abrupt) *with United Pacific Ins. Co. v. Van's Westlake Union, Inc.*, 34 Wash.App. 708, 664 P.2d 1262 (Wash.App. 1983)(sudden and accidental provision will cover claims where the injury was "neither expected nor intended"). However, *both states* require these terms to be to be construed in the relevant context, and to give ambiguous terms a construction most favorable to the insured. The ambiguities in the complaint's allegations and uncertainty in the law governing the interpretation of these policies, make it arguable whether coverage under the "sudden and accidental" exception could exist. If any of the claims alleged could even arguably be covered, the insurer is required to defend.

    At this time, as the issue of coverage is not before the court, the court need not resolve the debate regarding the construction of these pollution exclusion clauses. Whether the "sudden and accidental" exception broadly includes unexpected events or only pollution occurring during an abrupt accident, the EPA's complaint cannot be fairly read to have clearly and unambiguously precluded either as a possible cause, even in part, of the damage asserted therein. Contrary to positions stated at oral argument, there is no requirement that the facts in the complaint specifically and unequivocally make a claim for coverage. If there is any legal or factual basis that could be developed which would obligate the insurer to pay under the policy, the insured is entitled to a defense. As INA and Continental cannot demonstrate the complaint's allegations cast the pleading solely so to preclude coverage, the pollution exclusion provision does not provide a basis for avoiding the duty to defend. The complaint filed by the EPA triggered INA and

Continental's duties to defend under the policies.

d.      Plaintiffs Did Not Breach the Notice Provision of INA's Policy

INA claims Newmont/Dawn breached the notice provision of its policy by failing to provide notice of the underlying suit until five months after the United States filed suit. INA contends the breach nullifies any duty to defend.   INA's policy provides that the insured shall "immediately forward...notice, summons or other process" to INA.

The purpose of the prompt  notification provisions is to allow an insurer to make prompt and thorough investigation of claims.  INA's contention is meritless.  INA was given notice of the EPA's investigation of the Midnite Mine in 1997.  The United States filed its initial complaint on January 28, 2005, however, the court entered a show cause order for lack of service on May 19, 2005.  On May 20, 2005, the United States filed an Amended Complaint and then responded to the show cause order on June 3, 2005, indicating the United States was waiting for the return of waivers of service forms for the Amended Complaint.  On May 25, 2005, Newmont sent letters to its carriers, including INA, notifying it of the suit and providing copies of the Complaint.  The court concludes there was no delay in providing notice to INA, and certainly no prejudice to INA.

e.      Breach of Contract

Based on the above analysis, the court concludes Plaintiffs have demonstrated that INA and Continental had a duty to defend them in the underlying CERCLA lawsuit as the allegations therein could potentially trigger coverage under the terms of the insurance policies.   As Plaintiffs have moved for partial summary judgment as to the issue of liability on their claim for breach of duty to defend, the next question becomes whether INA and Continental breached their duties to defend.

Plaintiffs appear to be arguing that INA and Continental have breached their duty to defend by 1) failing to timely acknowledge the duty to defend after the tender of defense request; 2) failing to provide counsel in defense of the claim; and 3) failing to reimburse Plaintiffs for any and all legal costs incurred by it in the defense of that action. Very little discussion was devoted by the parties to the subject of breach.   It is

ORDER - 20

undisputed that INA never responded in writing whether it was either agreeing to or declining to defend the Plaintiffs. INA's letters generally reserving all rights and its participation "in multiple meetings," does not equate to undertaking defense of the action subject to a reservation of rights. It is further undisputed that INA did not provide a defense and has not paid for Plaintiffs defense. Accordingly, the court finds there are no material facts in dispute as to whether INA breached its duty to defend.

By way of footnote, Continental argues it did not breach its duty to defend. Ct. Rec. 177 at 18. Continental contends that it did not refuse to defend Plaintiffs, but rather, agreed to defend subject to a full reservation of rights on June 28, 2007. Continental also contends that sometime after the time of the tender of defense request it "attempted to negotiate a defense cost sharing agreement with Newmont and its other insurers." The mere offer to participate on a pro rata basis, without any further action, does not equate to providing a defense or otherwise cure the breach of its duty to defend. Moreover, while the law encourages insurers to enter into cooperative arrangements to promptly resolve issues regarding the duty to defend, the facts only suggest Continental spent two years *attempting* to reach agreement. There are no facts of record evidencing a cooperative arrangement was ever reached. Based upon the facts and evidence of record and the limited argument raised, the court concludes the record undisputedly demonstrates that Continental breached its contractual duty to defend Plaintiffs. Plaintiffs' Motion for Partial Summary Judgment regarding liability of INA and Continental for breach of the duty to defend is **GRANTED**.

**B.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: BAD FAITH**

Plaintiffs also seek summary judgment against OneBeacon, Continental and INA on their claims of bad faith denial of the duty to defend and violation of the Washington Consumer Protection Act, RCW 19.86. Plaintiffs claim the insurers "unreasonably" refused to honor its duty to defend and essentially deserted its policyholder, and therefore have acted in bad faith. Plaintiffs contend the insurer's bad faith is a per se violation of the Washington Consumer Protection Act. Plaintiffs allege Washington law applies and

1    do not allege a violation of New York consumer protection laws. Defendants argue the
2    court should dismiss Plaintiffs' bad faith claim as New York law applies, which does not
3    recognize a bad faith claim for breach of insurance contract.

4    **1. *Choice of Law***

5    The first step in a choice of law analysis is to determine whether an actual conflict
6    exists between the substantive laws of the interested jurisdictions, here, Washington and
7    New York.  Washington law allows for an insured to bring an action for bad faith refusal
8    to defend.  When an insurer has a duty to defend, its failure to respond to a defense
9    request amounts to bad faith.  *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wash.2d
10   751, 759, 58 P.3d 276 (2002).  New York takes the more conservative approach adopted
11   in a minority of jurisdictions, which does not recognize a cause of action for the insured
12   for bad faith breach of an insurance contract.   Under New York law, bad faith claims are
13   considered contractual (as opposed to torts) and punitive damages are available in a bad
14   faith claim only where Plaintiffs can demonstrate they were victims of a *tort* independent
15   of the insurance contract.  *See Acquista v. N.Y. Life Ins. Co.,* 730 N.Y.S.2d 272, 278
16   (N.Y.App.Div. 2001) (the duties and obligations of the parties to an insurance policy are
17   contractual rather than fiduciary); *Polidoro v. Chubb Corp.*, 354 F.Supp.2d 349, 352
18   (S.D.N.Y. 2005) ("Plaintiff's claim for bad-faith conduct in handling insurance claims is
19   not legally-cognizable under New York law."); *Fasolino Foods Co. v. Banca Nazionale*
20   *del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992) ("Under New York law, parties to an
21   express contract are bound by an implied duty of good faith, but breach of that duty is
22   merely a breach of the underlying contract.")  As to the claim now before the court for
23   bad faith denial of the duty to defend, Plaintiffs do not allege a tort independent of the
24   insurance contract.  Accordingly, if New York law applies, Plaintiffs bad faith cause of
25   action would be duplicative of their breach of contract action and would not be a legally
26   cognizable cause of action.   Based on the analysis of the laws of the interested states, the
27   court concludes that there is an actual conflict of law sufficient to justify a choice-of-law
28   analysis.

In Washington, claims for bad faith breach of contract sound in tort. *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 165 Wash.2d 122, 130, 196 P.3d 664, 668 (Wash. 2008), (quoting *Safeco Ins. Co. of Am. v. Butler*, 118 Wash.2d 383, 389, 823 P.2d 499 (1992)).   Washington also applies tort conflict of law principles to consumer protection act claims. *Schnall v. AT & T Wireless Servs., Inc.*, 139 Wn.App. 280, 292-94 (2007). In resolving conflict of law tort questions, Washington follows the Restatement (Second) of Conflict of Laws' most significant relationship test found at § 145.  The court must evaluate the contacts both quantitatively and qualitatively*, according to their relative importance to the particular issue at hand*.  *Id.; See also, Martin v. Goodyear Tire & Rubber Co.*, 114 Wash.App. 823, 830, 61 P.3d 1196 (2003).

The contacts typically considered in a tort conflict of law analysis include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

The parties have discussed the various connections to New York and Washington, however none of the Defendant insurers have analyzed these contacts *according to their relative importance* to the issue of bad faith.  In fact, the insurers' discussions of choice of law pertained to the issue of *coverage*, which is not even before the court.  The court also rejects the contention that the footnote in Justice Ramos' May 15, 2009 order was a conclusive decision on choice of law or that it speaks to the issue raised herein.

The choice of law analysis favors application of Washington law to the bad faith breach of contract claim.  The alleged injury here is lack of performance of the duty to defend under the contract.  Since the issue is the manner and method of performance under the insurance policy, Washington has the greatest contacts with such claim for two primary reasons: First, Washington is the place of performance of the contract as it is the place where the events which constituted the basis of the underlying lawsuit occurred as

well as where the EPA's lawsuit was filed and defended.  *See e.g.*, *Schwartz v. Twin City Fire Ins. Co.*492 F.Supp.2d 308 (S.D.N.Y. 2007)(applying New York law to bad faith claim where New York was the place where the underlying events and lawsuit was filed); *Hartford Accident & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.App. 1998) (place of performance is the location where the insurance funds will be put to use). Second, Washington has a substantial interest in deterring bad faith conduct of insurers within the state.  Dawn Mining is also a Washington corporation and the Defendants provide insurance nationwide.  The court finds little connection, if any at all, for New York law to be applied to the issue of bad faith.  Perhaps the best argument is that New York law is a candidate for governing the question of coverage under the policies, and that in the interests of economy, ease of application, and uniformity of result, the court should require the application of one state's law to all the issues in the entire action.  No one has convinced the court this ought to be the case, nor does the court think it would be fair or proper.  As messy and unpredictable as it may be, certainly is not an anomaly to have various states laws applied to different issues in an insurance dispute involving a policy without a choice of law provision.  The court's application of Washington law herein, <u>does not</u> decide the issue of choice of law as to the coverage dispute in which other contacts, such as the insured's headquarters at the time of contracting, might play a more significant role than they do here.

## 2. *Washington Law on Bad Faith*

"In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded."  *Kirk v. Mt. Airy Ins. Co.*, 134 Wash.2d 558, 560, 951 P.2d 1124 (1998).  Washington law imposes potentially severe consequences on the insurer found to have acted in bad faith: The insurer acting in bad faith may forfeit defenses to the claim tendered and handled in bad faith, including the defense that the claim was never covered at all.  *Woo v. Fireman's Fund Ins. Co.*, 150 Wash.App. 158, 171, 208 P.3d 557, 564 (Wash.App. Div. 1 2009).  Bad faith breach of the duty to defend will not be found where an accompanying denial of coverage is based upon a reasonable

interpretation of the insurance policy. *Kirk*, 134 Wash.2d at 560. A showing of harm is an essential element of an action for bad faith handling of an insurance claim, however, a rebuttable presumption of harm arises when the insured demonstrates the insurer acted in bad faith. *Id.* at 562. "Whether an insurer acted in bad faith is a question of fact." *Smith v. Safeco Ins. Co.*, 150 Wash.2d 4 78, 485, 78 P.3d 1274 (2003). While questions of the reasonableness of a party's action are usually inappropriate for adjudication on summary judgment, a trial court is under a duty to decide this question as a matter of law where the facts are undisputed or are susceptible of only one reasonable interpretation.

### 3. Claim against OneBeacon

Plaintiffs bad faith breach of the duty to defend and associated Consumer Protection Act claim necessarily fail against OneBeacon, whom the court has determined had no duty to defend. Because it had no duty to defend, its refusal to do so could not have been unreasonable or in bad faith. Though a cause of action exists in Washington for bad faith mishandling of a claim (regardless of whether the duty to defend exists), such a claim was not the basis or subject of Plaintiffs' summary judgment motion.

### 4. Claims against Continental and INA

Plaintiffs summarily contend in their moving papers "the insurers' flat denial of their duties to defend" establishes their bad faith. In their Reply Memorandum, Plaintiffs assert their theory of bad faith focuses on claims-handling aspects of Continental and INA's denial of a defense, including the delay and lack of response to the tender of defense, as well as Continental's failure to honor its untimely agreement to defend. Ct. Rec. 187 at 28.

The court denies Plaintiffs' motion for summary judgment with regards to its claim that Continental and INA acted in bad faith when refusing to defend. Plaintiffs devote no more than a page and a half in their initial memorandum to this entire issue. Without the benefit of the court's ruling on the duty to defend and choice of law, the parties' briefing hardly focused on the analysis required here in view of the court's ruling. The lack of adequate briefing by all parties, causes the court to believe the record is not fully

ORDER - 25

developed.  Other than the parties' written communications, there are very few other facts in the record regarding the nature of Continental and INA's conduct, meetings, and interaction with Plaintiffs since the time of the tender of defense.  Plaintiffs may not establish bad faith by simply proving a breach of the duty to defend occurred.   Whether Continental and INA's breach constituted "bad faith"is an issue which is best left for the court to evaluate at a subsequent time on a more fully-developed record.

Summary judgment is likewise precluded because there is no evidence in the record on the element of harm.  It is unknown whether Plaintiffs did or did not suffer any harm as a result of Continental and INA's alleged bad failure to timely defend.  At all times known to this court, Plaintiffs were represented by competent counsel who aggressively defended their interests.  It is unknown whether the Plaintiffs' alleged unreasonable breach of the duty to defend made any difference at all in the outcome.

Because questions of fact remain on Plaintiffs' bad faith claims, the court likewise cannot decide the Consumer Protection Act claim, which as asserted by Plaintiffs, is derivative of the bad faith claim.

## IV.    CONCLUSION

For the abovementioned reasons, Plaintiffs' Motion for Partial Summary Judgment (Ct. Rec. 160) is GRANTED IN PART and DENIED IN PART.   The motion is Denied as to Defendant OneBeacon, as OneBeacon owed Plaintiffs no duty to defend.   Plaintiffs' partial summary judgment motion is granted as to the breach of the duty to defend claims asserted against Defendants Continental and INA.  Plaintiffs' motion is denied on the bad faith and Consumer Protection Act claims against OneBeacon, Continental and INA.

///////

//////////////

/////////////////////

**IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and furnish copies to counsel.

**DATED** this 13th day of November, 2009.

ORDER - 26

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE