1  Michael P. Hooks, WSB No. 24153          **HONORABLE JUSTIN L. QUACKENBUSH**
   Martin J. Pujolar, WSBA No. 36049
2  Forsberg & Umlauf, P.S.
   901 Fifth Avenue, Suite 1400
3  Seattle, WA  98164-2050
   Telephone (206) 689-8500
4  Facsimile (206) 689-8501

5  Attorneys for Defendant Appalachian
   Insurance Company

6

7

8                          UNITED STATES DISTRICT COURT
9                          EASTERN DISTRICT OF WASHINGTON

10  NEWMONT U.S.A. LIMITED and DAWN          No. 2:09-cv-033-JLQ
    MINING CO,
11                                            EXPERT REPORT OF WILLIAM
                 Plaintiffs,                  CORMACK FILED PURSUANT TO
12                                            RULE 26(A)(2)
           vs.
13
    AMERICAN HOME ASSURANCE CO.,
14  APPALACHIAN INSURANCE CO.,
    CENTURY INDEMNITY CO. (as successor
15  to CALIFORNIA UNION INSURANCE
    CO.), CONTINENTAL CASUALTY CO.,
16  FEDERAL INSURANCE CO., FIREMAN'S
    FUND INSURANCE CO., GRANITE
17  STATE INSURANCE CO., GREAT
    AMERICAN INSURANCE CO., HARBOR
18  INSURANCE CO., INSURANCE
    COMPANY OF NORTH AMERICA,
19  INSURANCE COMPANY OF THE STATE
    OF PENNSYLVANIA, NATIONAL UNION
20  FIRE INSURANCE COMPANY OF
    PITTSBURGH, PA., ONEBEACON
21  INSURANCE CO., (as successor to
    EMPLOYER'S SURPLUS LINES
22  INSURANCE CO.), PACIFIC INDEMNITY
    CO., SEATON INSURANCE CO. (as
23  successor to UNIGARD INSURANCE CO.),
    STONEWALL INSURANCE CO.,

EXPERT REPORT OF WILLIAM CORMACK FILED PURSUANT TO RULE
26(A)(2)   PAGE 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON  98164-2050
(206) 689-8500 • (206) 689-8501 FAX

483224 / 3420.0001

1   ALLSTATE INSURANCE CO. (as successor
    to NORTHBROOK INDEMNITY CO.), and
2   TRAVELERS CASUALTY AND SURETY
    CO. (as successor in interest to AETNA
3   CASUALTY AND SURETY CO.),

4           Defendants.

5

6           Pursuant to Federal Rule of Civil Procedure 26(a)(2), the expert report by William

7   Cormack (attached hereto as Exhibit A) is hereby served and filed on behalf of Defendants

8   Appalachian Insurance Company, American Home Assurance Company, Insurance Company

9   of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, PA.,

10  Granite State Insurance Company, the Stonewall Insurance Company and OneBeacon

11  America Insurance Company.

12          DATED this _____ day of September, 2010.

13

14                                  FORSBERG & UMLAUF, P.S.

15

16                          By: _____
                                Michael P. Hooks, WSBA #24153
17                              Attorneys for Defendant Appalachian
                                Insurance Company

18

19

20

21

22

23

EXPERT REPORT OF WILLIAM CORMACK FILED PURSUANT TO RULE
26(A)(2)   PAGE 2

483224 / 3420 0001

1

## CERTIFICATE OF SERVICE

2      The undersigned certifies under the penalty of perjury under the laws of the State of

3  Washington that I am now and at all times herein mentioned, a citizen of the United States, a

4  resident of the State of Washington, over the age of eighteen years, not a party to or interested

5  in the above-entitled action, and competent to be a witness herein.  On the date given below I

6  caused to be served the foregoing EXPERT REPORT OF WILLIAM CORMACK FILED

7  PURSUANT TO RULE 26(a)(2) on the following individuals in the manner indicated:

8

|  |  |
|---|---|
| Mr. James E. Reed<br>Winston & Cashatt<br>601 W. Riverside Ave., Suite 1900<br>Spokane, WA 99201<br>( x ) Via ECF | Sarah Block Wallace<br>Featherstone DeSisto, LLP<br>600 17th St., Suite 2400S<br>Denver, CO 80202<br>( x ) Via ECF |
| Mr. Bruce A. Featherstone<br>Featherstone DeSisto, LLP<br>600 17th St., Suite 2400S<br>Denver, CO 80202<br>( x ) Via ECF | Mr. Andrew J. Petrie<br>Featherstone DeSisto, LLP<br>600 17th St., Suite 2400S<br>Denver, CO 80202<br>( x ) Via ECF |
| Mr. Lawrence Gottlieb<br>Betts, Patterson & Mines, P.S.<br>701 Pike St., Suite 1400<br>Seattle, WA 98101<br>( x ) Via ECF | Mr. David E. Prange<br>Prange Law Group LLC<br>111 S.W. 5th Ave., Suite 2120<br>Portland OR 97204<br>( x ) Via ECF |
| Mr. Aaron C. Denton<br>Prange Law Group LLC<br>111 S.W. 5th Ave., Suite 2120<br>Portland OR 97204<br>( x ) Via ECF | Ms. Pamela A. Lang<br>Soha & Lang, P.S.<br>701 Fifth Ave., Suite 2400<br>Seattle, WA 98104<br>( x ) Via ECF |
| Ms. Misty A. Edmundson<br>Soha & Lang, P.S.<br>701 Fifth Ave., Suite 2400<br>Seattle, WA 98104<br>( x ) Via ECF | Ms. Melissa O'Loughlin White<br>Cozen O'Connor<br>1201 Third Ave., Suite 5200<br>Seattle, WA 98101-3033<br>( x ) Via ECF |

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON  98164-2050
(206) 689-8500 • (206) 689-8501 FAX

483224 / 3420.0001

1

Mr. Donald S. Kunze
Opus Law Group, PLLC
1325 4th Ave., Suite 1800
Seattle, WA 98101-2530
( x ) Via ECF

Mr. Thomas S. James, Jr.
Opus Law Group, PLLC
1325 4th Ave., Suite 1800
Seattle, WA 98101-2530
( x ) Via ECF

2

3

4

Mr. Brad E. Smith
Ewing Anderson, P.S.
221 N. Wall St., Suite 500
Spokane, WA 99201-0824
( x ) Via ECF

Mr. Brian W. Walsh
Colliau Elenius Murphy Carluccio Keener &
Morrow
405 Howard St., Suite 600
San Francisco, CA 94105
( x ) Via ECF

5

6

7

8

Ms. Cathy A. Spicer
Lane Powell Spears Lubersky, LLP
1420 Fifth Ave., Suite 4100
Seattle, WA 98101-2338
( x ) Via ECF

David R. Voyles
Lane Powell
1420 5th Ave Ste 4100
Seattle, WA 98101-2375
( x ) Via ECF

9

10

11

Elaine Whitman Klinger
Christie Pabarue Mortensen & Young
1880 JFK Boulevard, 10th Floor
Philadelphia, PA 19103
( x ) Via ECF

Jonathan L. Kranz
D'Amato & Lynch, LLP
70 Pine Street
New York, NY 10270-0110
( x ) Via ECF

12

13

14

Ms. Katie Smith Matison
Lane Powell, PC
1420 5th Ave., Suite 4100
Seattle, WA 98101-2338
( x ) Via ECF

Michael J. Baughman, Esq.
Cohn Baughman & Martin
333 W. Wacker Drive, Suite 900
Chicago, IL 60606 US
( x ) Via ECF

15

16

17

Neal M. Glazer, Esq.
D'Amato & Lynch
70 Pine Street
New York, NY 10270
( x ) Via ECF

Ralph J. Luongo
Christie Pabarue Mortensen & Young
JFK Boulevard, 10th Floor
Philadelphia, PA 19103
( x ) Via ECF

18

19

20

John C. Falls
Christie Pabarue Mortensen & Young
1880 JFK Boulevard, 10th Floor
Philadelphia, PA 19103
( x ) Via ECF

Cynthia Ruggerio
Christie Pabarue Mortensen & Young
1880 JFK Boulevard, 10th Floor
Philadelphia, PA 19103
( x ) Via ECF

21

22

23

EXPERT REPORT OF WILLIAM CORMACK FILED PURSUANT TO RULE
26(A)(2)    PAGE 4

483224 / 3420.0001

1

Mr. Christopher L. Neal
Mills Meyers Swartling

2

1000 2nd Ave., Floor 30
Seattle, WA 98104

3

( x ) Via ECF

Mr. David M. Schoeggl
Mills Meyers Swartling
1000 2nd Ave., Floor 30
Seattle, WA 98104-1064
( x ) Via ECF

4

Kathryn C. Tondel
Landman Corsi Ballaine & Ford PC

5

120 Broadway, 27th Floor
New York, NY 10271

6

( x ) Via ECF

Louis G. Corsi
Landman Corsi Ballaine & Ford PC
120 Broadway, 27th Floor
New York, NY 10271
( x ) Via ECF

7

Mr. Michael E. Ricketts
Gordon Thomas Honeywell

8

600 University, Suite 2100
Seattle, WA 98101

9

( x ) Via ECF

Lawrence D. Mason
Segal McCambridge Singer & Mahoney Ltd.
233 S Wacker Dr Ste 5500
Chicago IL 60606
( x ) Via ECF

10

11

**SIGNED** this 1st day of September, 2010, at Seattle, Washington.

12

13

Paula M. Shapiro

14

15

16

17

18

19

20

21

22

23

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

483224 / 3420.0001

Exhibit A

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Newmont USA Limited
and Dawn Mining Co.

                  Plaintiffs,

    vs.

American Home Assurance
Co., et al.,

                Defendants

No. CV-09-033-JLQ

# Expert Report

## of William T. Cormack

Respectfully Submitted,

William T. Cormack

William T. Cormack

**I.**

**Qualifications – Resume (Exhibit A)**
**And Fee Schedule (Exhibit B)**

I am currently a Principal at 2nd Insight, Inc.  For 12 years I have performed the duties of an insurance expert and consultant.  I have 45 years of experience in the industry, with a major amount of time as an employee of Wausau Insurance Company.  I earned my law degree from Northwestern University in 1965 and thereafter went to work for the law firm of Levin & Upton in Chicago, Illinois.  I started working on insurance coverage litigation my first year at Levin & Upton, which marked the beginning of my connection to the insurance industry.  I continued to handle insurance coverage cases at law firms in Chicago until 1974.  I personally tried many jury cases and went to verdict in approximately 14 cases.

From 1974 to 1984, I was employed as a Senior Liability Claim Specialist for Wausau Insurance Company.  In that role, I handled the major exposure and coverage claims in the Illinois region for Wausau and managed litigation in multiple jurisdictions under various insurance policy forms.  I handled a large number of major insurance claims including bodily injury and property damage claims involving automobile, premises, products and worksite injuries and damages.  I dealt with many other insurers, brokers and agents throughout my claim handling career.

From 1984 to 1985, I continued my employment at Wausau as an Environmental Claims Supervisor, in which capacity I handled all of the environmental claims for Wausau throughout the United States.  From 1985 to 1995, my title at Wausau was Environmental Claims Manager.  I performed these claim manager services for Wausau and its affiliates, Nationwide Insurance Company and Scottsdale Insurance Company.  In that capacity, I handled and/or supervised the handling of liability claims in almost every state and managed liability and coverage litigation throughout the U.S.  I personally handled the environmental claims involving Wausau's excess insurance company, Wausau International Underwriters, Inc.

2

I developed an environmental claims unit, employing approximately twenty claim handlers where I implemented claim handling procedures and practices and supervised the training of claims handlers, including training under Unfair Claims Settlement Practices Regulations.

As Claims Manager, I handled or supervised the handling of approximately 10,000 liability and coverage claims under various kinds of policy forms, including primary, umbrella and excess policies (including 4,000 excess liability claims) in effect in the 1940's, 1950's, 1960's, 1970's, and 1980's. Among those forms included policies with provisions very similar to those forms alleged to constitute the policies in this case.

I testified on behalf of the excess carrier, Wausau International Underwriters (W.I.U), as the person most knowledgeable on underwriting practices at W.I.U.

During my insurance career, I have performed underwriting functions and have testified on numerous occasions as the person most knowledgeable concerning the underwriting procedures of various insurance companies. I have been involved in the interpretation and drafting underwriting process.

**RESUME – EXHIBIT A.**

My resume sets forth cases in which I have given deposition testimony and cases in which I have given trial testimony. My Resume sets forth my publications.

**FEE SCHEDULE – EXHIBIT B.**

My Fee Schedule sets forth my hourly charges for this matter.

I currently am a principal at 2nd Insight, Inc. and have, for 12 years, served as a consultant and expert in the insurance industry.

3

## II.

## Documents Reviewed

A.    Appalachian Insurance Company
- Claim file.
- Policy No. XL71235
- Plaintiffs' first Amended Complaint
- Expert Report of Robert N. Hughes
- Newmont's Motion For Partial Summary Judgment and Memorandum In Support
- Declaration of Paul Pronty and Exhibits
- OneBeacon's Opposition To Motion For Partial Summary Judgment and Settlement of Facts
- Insurance Company of North America's Opposition to Motion For Partial Summary Judgment
- A-Mark financial Corporation v. Cigna Property and Casualty Companies etal., 34 Cal. App. 4th 1179 (1995)
- The Continental Insurance Company's Memorandum in Opposition To Motion For Partial Summary Judgment
- Newmont's Replies and Statements of Fact and Declaration of Sarah B. Wallace
- Judge Quackenbush's July 27, 2010 Ruling
- Order of Judge Quackenbush, November 13, 2009
- Judge Charles Ramos' Ruling on May 15, 2009
- Judge Charles Ramos' Ruling of December 9, 2009
- Coverage chart and List of Insurers

B.    OneBeacon America, Insurance Company
- Claim documents Bates numbers: NYPL 000001 – 47; 58 – 93; 98 – 103; 108 – 109; 114 – 115; 132 – 133; 138 – 139; 250 – 254; 257 – 349; 366 – 369; 393; 404; 434 – 437; 439; 443 – 459; 461 – 462; 466, 468 – 475; 496 – 534; 536 – 564; 614 – 616; 618 – 621; 626 – 627; 630 – 643; 645 – 768; 783 – 792; 797 – 841;

4

944 – 1014; 1021 – 1024; 1029 – 1033; 1083 – 1495; 1545 – 1559; 1572 – 1592;
1602 – 1954; 1961 – 1966; 1969, 1974, 2004, 2007 – 2011; 2019 – 2024; 2062 –
2075; 2091 – 2158; 2161 – 2166; 2186 – 2188; 2190, 2193 – 2246; 2249 – 2255;
2258 – 2262; 2264, 2266 – 2290; 2292 – 2294; 2296 – 2267; 2301 – 2305; 2307 –
2320; 2328, 2331 – 2361; 2378 – 2405; 2407 – 2430; 2432 – 2435; 2438 – 2458;
2462, 2464 – 2466; 2470, 2478, 2480 – 2485; 2487, 2490, 2496 – 2617; 2624 –
2665; 2668, 2673 – 2679; 2684 – 2687; 2689 – 2832; 2834 – 2924; 2927 – 2931;
2935 – 2936; 2938 – 2945; 2947, 2949 – 2957; 2960, 2966, 2967, 2969, 2971 –
2977; 2979 – 3045; 3077 – 3078; 3111 – 3126

**C.**   Stonewall Insurance Company claim documents
- Claim documents Bates numbers: 000001 - 000319

**D.**   Chartis
- Claim documents Bates numbers: Chartis 199 – 00605

## III.

### Introduction

Newmont U.S.A. Limited ("Newmont") and Dawn Mining Co. ("Dawn") have filed their First Amended Complaint in this Court against various primary and excess insurers who issued insurance policies to Newmont and/or Newmont and Dawn from 1969 to 1985. This complaint seeks a declaration of coverage under each primary and excess policy for alleged environmental liabilities arising out of Dawn's ownership or operation of the Midnite Mine site in Washington. Dawn, a subsidiary of Newmont, allegedly engaged in active uranium mining at the site. The First Amended Complaint contained several causes of action based on extra contractual theories, including alleged breaches by each insurer of an implied covenant of good faith and fair dealing in its handling of the claims for coverage made by Newmont and Dawn. On October 17, 2008, in the underlying CERCLA litigation, Newmont and Dawn were found liable for certain costs incurred or to be incurred with respect to the Midnite Mine site. The final amount of such costs has not been determined.

Two simultaneous declaratory actions are currently proceeding, the instant case and the declaratory action filed in the New York State Court. The Court in New York has held that New York law applies to Newmont's claims and has denied Newmont's motion to dismiss the New York case on forum non conveniens grounds. In another decision, the New York Court granted partial summary judgment for various insurers based upon coverage being barred by pollution exclusions.

The Washington District Court in one ruling has held that OneBeacon America Insurance Company ("OneBeacon") did not have a duty to defend under its umbrella policy. The Court then held that Newmont was collaterally estopped from relitigating the choice of law questions that had been decided by the New York Court in its grant of summary judgment based upon pollution exclusions. The District Court, like the New York Court, rejected Newmont's argument that the filing of New York action was an instance of improper forum shopping.

6

Newmont and Dawn have filed with the Court the Expert Report of Robert Hughes in support of their allegations in the First Amended Complaint.

I have been retained on behalf of the following excess insurers: Appalachian Insurance Company ("Appalachian"); The Chartis Insurance group including American Home Assurance Company ("American Home"), Insurance Company of the State of Pennsylvania ("ICSOP"), National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and New Hampshire Insurance Company ("Granite State"); The Stonewall Insurance Company ("Stonewall"); and Employers' Surplus Lines Insurance Company ("OneBeacon").

An examination of Mr. Hughes' Report reveals that Mr. Hughes has opined on purely legal issues and for that reason, no point by point response is required.  In the event, however, that the Court might allow testimony by Mr. Hughes on any of the issues concerning the excess insurers' duty to defend or indemnify or the issues of improper forum shopping or claim handling, I would wish to respond.  With this caveat in mind, I generally will address issues of defense and indemnity.

**IV**

### Excess Insurance And
### How It Works

Excess insurance policies for commercial insureds generally provide insurance protection in a layered fashion, one policy above another in each policy year, all in excess of the primary general liability policy. In this manner, the risk of a catastrophic loss is spread among multiple carriers. Each policy is designed to apply to a loss only if the liability limits of the underlying policies have been exhausted by payment of settlements or judgments or defense expenses if covered.

The first layered policy above the primary policy is usually referred to as the umbrella policy. Each excess policy at each level typically will follow form to this underlying umbrella policy. "Following form" means that the excess policies will adopt the terms and conditions of the umbrella policy with respect to the hazards insured, but these excess policies do not follow form to any duty to defend or any duty to insure at the same liability limits that might be provided for in the umbrella policy. The excess policies follow form only with respect to the terms of the umbrella as they relate to indemnity coverage and the conditions.

Some excess policies are not true following form policies. They do not adopt any provision of the umbrella policy but merely stipulate that the policies cover liabilities arising out of hazards covered by and as defined in the underlying umbrella policy. As a result, these policies have their own conditions.

The conditions of the excess policies (i.e., the Loss Payable clause and other provisions) require the exhaustion of underlying insurance in order for the excess policies to attach and respond to a loss.

Pursuant to industry custom and practice, an excess insurer has no obligation to accept coverage for a claim, deny coverage for a claim or reserve its rights with respect to a claim until the policyholder has established that the underlying policy limits have been

8

exhausted.  The excess insurer, moreover, has no obligation to pay until the policyholder has presented a definite claim for a loss that the insured has paid or for which the insureds has become liable and that liability has been established.  The burden remains upon the policyholder to establish exhaustion of the underlying insurance.

Insurance policies are generally "pay on behalf of" policies or "indemnity" policies.  Typically, the primary general liability policy is a "pay on behalf of" policy which policy pays for defense or for settlements or judgments in the first instance or as the defense expenses are incurred or the settlements or judgments are made or entered. Indemnity policies reimburse the insureds for settlements or judgments and sometimes for defense expenses that the insured has already paid or has been found liable to pay. Whether an indemnity excess policy reimburses an insured for defense expenses depends on the definition of ultimate net loss in the excess policy.

Pursuant to industry custom and practice and the excess policy provisions, indemnity policies as a rule do not provide a duty to defend and do not "drop down" to defend upon exhaustion of the primary policy's limits of liability.

Some indemnity umbrella policies, by special endorsement, provide for a duty to defend as respects occurrences covered under the umbrella policy but not covered under the primary policy (hence, the name umbrella policy), but these indemnity policies do not have any duty to defend in the event that the primary policy's limits have been exhausted, unless the policy by specific language requires a duty to defend.

9

## V.

### Applicable Terms And Provisions of the Excess Policies At Issue

#### A.

#### The Appalachian Policy

Appalachian provided excess insurance to Newmont Mining and Magna Copper under a single policy in effect from 7/1/72 to 7/1/73 with limits of 3,000,000 pro-rata part of 10,000,000 excess of 10,000,000 excess of primary.

This indemnity policy provided insurance protection against loss in accordance with the applicable insuring agreements. Therefore the exclusions and definitions of the primary insurance apply to the Appalachian policy. "Loss" is defined to exclude all expense and costs. Therefore, the policy provides no duty to defend nor any duty to indemnify for defense expenses or costs.

An examination of the claim file reveals that the underlying limits have not been exhausted. Pursuant to the terms and condition of the policy and industry custom and practice, this policy had no obligation to respond to the alleged loss of Newmont and/or Dawn.

#### B.

#### The Chartis Policies

American Home Policy No. 355273; Policy Period 7/1/69 to 7/15/69; 2,000,000 part of 15,000,000 excess 5,000,000 excess of primary (only a Declarations page has been provided).

ICSOP Policy No. 429-1019; Policy Period 7/1/69 to 7/1/72; 1,000,000 part of 15,000,000 excess 5,000,000 excess primary.

National Union Policy No. 122 87 13; 7/18/77 to 7/18/78; 500,000 part of 14,500,000 excess 5,000,000 excess primary.

Granite State Policy No. 6178-0593; 7/18/78 to 7/18/79; 10,000,000 excess 10,000,000 excess primary.

National Union Policy No. 991; Policy Period 7/18/80 to 7/18/81, 10,000,000 excess of 20,000,000 excess of primary.

These policies are the only Chartis policies addressed in the Washington declaratory action, except for an alleged ICSOP policy which has not been substantiated.

The ICSOP policy numbered 429 – 1019, is an indemnity policy which does not provide a duty to defend but only a duty to reimburse expenses. The policy insures liability arising out of hazards covered by and as defined in the underlying umbrella policies. Thus, any exclusion in the umbrella related to any coverage would be adopted by ICSOP's policy terms. The policy provides coverage only to Newmont Mining Corporation and Magna Copper Company. Dawn is not shown as an insured.

The National Union policy, numbered 1228713, consists of a Declarations page and eight endorsements. On its Declarations page, the National Union policy provides that it follows all the terms and conditions of Stonewall's umbrella policy. This policy has no duty to defend in the event of exhaustion. The National Union policy contains an absolute pollution exclusion.

The National Union policy, No. 9910383, consists of just a Declarations page and one endorsement. This National Union policy has no duty to defend. This policy follows form to a North River Insurance Company ("North River") umbrella policy. The North River indemnity umbrella policy also has no duty to defend.

The Granite State policy is an indemnity excess policy which provides coverage for occurrences arising out of hazards covered in this Pine Top Insurance Company umbrella policy. The Pine Top policy contains an absolute pollution exclusion. The Granite State policy therefore incorporates this absolute pollution exclusion as part of its terms. The Granite State policy has no duty to defend.

The claim files do not present any evidence or substantiation that the underlying insurance limits have been exhausted.  Pursuant to industry custom and practice, no indemnity obligation for the Chartis insurers has been triggered

## C.
## The Stonewall Policies

Stonewall policy No. 13152, policy period 7/18/75  to 7/18/76, 4,500,000 excess primary

Stonewall policy No. 13624, policy period 7/18/76 to 8/18/77, 4,500,000 excess primary

Each of these umbrella policies indemnify for damages and expenses. The Loss Payable clause and other policy provisions provide that the policies do not attach and respond until the insured's underlying insurer has paid the underlying limits and the insured has made a definite claim for loss.  The underlying limits have not been exhausted, pursuant to the claim file materials.

## D.
## OneBeacon Policies

OneBeacon Policy No. E60003, Policy Period 7/1/69 to 7/1/72; difference between $5,000,000 and underlying.

OneBeacon Policy No. E60104, Policy Period 7/30/69 to 7/1/72, 2,000,000 part of 15,000,000 excess 5,000,000.

Policy No. 60003, like a typical umbrella policy, is an indemnity policy which, the Court has already held, has no duty to defend but only to reimburse defense expenses. Policy E60104 follows form to E60003.  There has been no substantiation of the

exhaustion of the underlying insurance policies and thus no obligation for OneBeacon to respond to Newmont's and Dawn's claims for coverage.

## Opinions

### A.

### Exhaustion

Pursuant to industry custom and practice and the excess policies' conditions, the excess insurers have no obligation to respond to Newmont's and Dawn's claims for coverage until exhaustion of the underlying policies' limits of liability has been established. Such exhaustion must result from actual payments of settlements or judgments by Newmont and Dawn. An examination of the claim materials and court filings has revealed that no substantiation of exhaustion has been presented to the insurers. Pursuant to industry custom and practice, the burden remains upon the policyholders to establish that exhaustion of the underlying policies' liability limits has occurred before any excess insurer is obligated to respond to the policyholders' claims for coverage.

### B.

### The Loss Payable Clause

Most excess policies have the following (or similar) conditions:

> "Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount of the self insured retention or the underlying limits on account of such occurrence. The insured shall make a definite claim for any loss for which the company may be liable under the policy within (12) months after the insured shall have paid an amount of ultimate net loss in excess of the amount borne by the insured or after the Insured's liability shall have been fixed and rendered certain either by final judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

13

Pursuant to this condition and industry custom and practice, after exhaustion has been substantiated, a final judgment after trial or a settlement approved by the excess insurer must be entered or concluded before any claim for indemnity payments is viable. With respect to defense costs (if those costs are included in the definition of ultimate net loss), the insured must have actually paid those defense costs. Finally, the Loss Payable clause requires that a definite claim for indemnity amounts or defense costs be made upon the excess insurer within twelve months after settlement, judgment or payment. A definite claim is a claim against a specific excess insurer for a specific amount of money claimed to be due and owing, taking into consideration the exhaustion of the underlying limits and the resolution of the issue of which policies have been triggered by the occurrence. Examination of the claim file material reveals that no such definite claim has been served upon any of the excess carriers. Therefore, liability under the excess policies has not attached, and Newmont's and Dawn's claims for coverage for defense costs and indemnity costs are premature and without substantiation. For these reasons, the claim in the First Amended Complaint that the excess carriers have violated the covenant of good faith and fair dealing by failing to defend or pay defense costs or indemnity costs is not sustainable, pursuant to industry custom and practice. An examination of the claim materials of the excess insurers reveals that the procedures utilized by the excess insurers in handling Newmont's and Dawn's claims for coverage were appropriate.

## C.

## Forum Selection

Mr. Hughes has opined on the propriety of the filing of the New York action by certain excess insurers. However, forum selection is a legal issue, and the Court has already rejected Newmont's argument that the filing of the New York action was an instance of improper forum shopping. However, in the event that the Court should permit testimony by Mr. Hughes on this issue along the lines expressed in his Report, I would respond to such testimony by making the following points concerning industry custom and practice. Mr. Hughes opines:

14

> "…There is no question that lack of a service of Suit clause does not give the insurer the right to choose a forum and file a preemptive coverage action in a state whose law is clearly adverse to the insureds' position, especially when the insured is engaged in litigating liability. In this case, the insurers preemptively filed a coverage action in New York State for reason that New York law favored their coverage position. In any opinion, this position could not be taken in good faith." (Hughes Report P. 24, 25).

Mr. Hughes' opinion that an insurer may never in good faith file a declaratory action even in a forum in which the insured was domiciled and in which the policies were issued, as long as the forum's law favored the insurer's coverage position, runs counter to industry custom and practice. This bizarre opinion would never allow an insurer to file a declaratory action in any forum, no matter what the nature of that forum's nexus to the coverage controversy, unless the law of that forum favored the policyholder. Based upon Mr. Hughes' opinion, an insurer would never in good faith be allowed to even advocate for the application of any jurisdiction's law which favored the insurer.

Pursuant to industry custom and practice, an insurer has always had the right to petition any court to hear a coverage dispute and have the coverage issues resolved if that court has jurisdiction and if venue may be established. To petition a court is not a claim evasion tactic.

Respectfully submitted,

_____

William T. Cormack

# Exhibit "A"
## To William Cormack Report

**2nd Insight, Inc.**
**William T. Cormack**
6 McIntosh
Clarendon Hills, IL. 60514
EXHIBIT A

## Experience:
### Insurance Coverage and Bad Faith Consulting Expert 1995 – Present

- Provide consulting services and expert testimony for insurance company and policyholders with respect to coverage for advertising, bodily injury, personal injury and property damage claims; under all kinds of primary and excess policies.
- Provide consulting services and expert testimony with respect to environmental toxic tort, products liability and errors and omissions claims.
- Provide consulting services and expert testimony with respect to insurance claim investigation and claim handling.
- Provide consulting services and expert testimony with respect to insurance claim handling regulations and standards and bad faith conduct.
- Representation of both insurers and policyholders
- Testified in thirty three deposition
- Testified in six trials

### Insurance Claim Handling background.

45 years experience in the insurance industry;
Wausau liability claim specialist 1974-1984; Environmental Claim Supervisor 1984-1985 and Environmental Claim manager 1985-1995 for Wausau Insurance Company 1985-1995 and Environmental Claim manager for its affiliates, Nationwide Insurance Company and Scottsdale Insurance Company. l988-1995. Continue to assist Nationwide Indemnity Company on a number of large claims. 1995- present; and testify as a corporate designee for underwriting and claim issues.

Handled a large number of insurance claims, including but not limited to, automobile, personal injury, homeowners, premises liability, product liability, first party property, worksite injury, and wrongful eviction, errors and omissions advertising injury claims. Adjusted claims in conjunction with many other insurers as well as a pursuing contribution and subrogation claims against those insurers. Negotiated personally many insurance claims and dealt with many insurance companies, claim adjusters and claim managers, under primary and excess liability policies. I performed these services while I was employed at Wausau Insurance Company.

- Supervised the handling of over 10,000 first and third party claims

- Managed litigation in over 1000 lawsuits
- Testified in over 100 depositions
- Testified in 4 trials
- Developed and organized environmental claim unit and implemented claim handling procedures and practices
- Managed and supervised over 20 claim handlers

Environmental Claim Supervisor Wausau Insurance Company. 1984-1985

- Handled and Investigated all the Environmental Claims for Wausau throughout the United States.

Senior Liability Claim Specialist for Wausau Insurance Company. 1974-1984

- Handled and investigated major exposure and liability and workers' compensation coverage claims for Wausau Insurance company in the Illinois region
- Handled the major product liability claims for Wausau including the billion dollar claims of Consumers power of Western Michigan for its nuclear power plant
- Managed litigation for hundreds of lawsuits under various insurance policy forms

**Legal Experience**

Associate, Levin & Uptown, Chicago, Illinois, 1965 - 67.
- Handled litigation of first party property cases and fire cases, liability cases.

Associate, Frank Glazer, Chicago, Illinois, 1967 - 71.
- Litigated bodily injury and property damage claims; insurance coverage cases and first party fire cases.

Associate, Law of Schaffenegger & Watson, Chicago, Illinois, 1971 - 74.
- Litigated bodily injury and property damage claims; insurance coverage cases.

During my legal career, briefed and/or argued cases before the 7th Circuit Court of Appeals, and the Illinois Supreme and Appellate courts. I personally tried many jury trials and went to verdict in approximately 14 cases.

Over the last thirteen years, Mr. Cormack has testified in approximately 100 depositions and four trials as an insurance claim handler witness (Federal District Court in Portland, Oregon, the hearing commissions for EPA Chicago, Il, San Bernardino Superior Court, CA, Supreme Court of New York, New York City, NY.)

2

## Education:

St. Joseph's College, Reneassler, Indiana
- Bachelor of the Arts - double major - Mathematics and Philosophy, 1961
- Who's Who in America Colleges & Universities, 1961

Woodrow Wilson Fellowship, Philosophy, Indiana University, 1962

Northwestern University Law School - Juris Doctor, 1965

## Seminars:

Presenter for California Continuing Legal Education by Insurance Coverage for Environmental Claims, State Bar Association, Sacramento, CA, 1996.  Paper submitted.

Presenter for Los Angeles County Bar Association, Symposium, Insurance Coverage for Environmental Claims, Los Angeles, CA, 1997.  Paper submitted.

Presenter for PLRB Conference- Nashville, Tennessee April 2006

## Selected Deposition Testimony:

Fred Stewart v. Royal Insurance Co., CIV 14425
Superior Court for the State of California,
County of Ventura (10/08/96) Bad faith issues.

Frank E. Bennett and Metal Preparations, Inc. v. American Motorists Insurance Co., CC100-738
Superior Court of the State of California,
County of Santa Clara. Bad Faith Issues

Tenby, Inc. v. Continental Insurance Company etal.
U.S. District Court, Central District of Los Angeles, California
No. 96-0129 WDK (MCX) Bad faith issues.

Goe Engineering Co. v. Commercial Union Insurance Co., RCV 17131
Superior Court for the State of California,
County of San Bernardino (01/05/98) This case involved issue of bad faith.

McElhinney v. Pacific National Insurance Co. CV 7595518, Superior Court, State of California on behalf of the policyholder.  Bad faith issues.

Steadfast Insurance v. Sofamor Danek, U.S. District Court , Western District of Tennessee, action # 2863GV (1997) on behalf of Steadfast ( Zurich) Insurance

3

Company. Insurance coverage and bad faith issues, excess policy

Pacific Arctic Railway (PARN) v. Royal Insurance Company Alaska State Court, Juneau, Alaska. First party property, and bad faith.

Piqua Battery v. Grain Dealers Mutual, (State Court Akron, Ohio;) bad faith, lost policy issues.

Joselyn Manufacturing v. Liberty Mutual Federal District Court, N.D. Illinois; Insurance coverage, pollution and bad faith issues. (2000)

International Paper Company v. Affiliated FM Insurance Company et.al., (California) San Francisco Superior Court action # 974350; Underlying class action and bad faith issues

McCubbery/ Bartells & Ward v. American Home Assurance Company (California) San Francisco Superior Court action # 992756 (2000-01) errors and omissions, bad faith issues

Albert D. Seeno Construction Company v. Century Indemnity Co. et.al., (California) Contra Costa County Superior Court Action # C99-01852 (2001) Construction defect; Bad faith issues

Tube Products v. Northbrook Insurance Company (State of Ohio) (2001); Bad Faith Issues

Bechtel v. U.S.F&G (U.S.D.C. Oklahoma) (2002)

P.R. Mallory v. American States Ins. Co. et.al. (Indiana) (2004) Environmental Contamination; Bad faith Issues

JBA v. St. Paul Ins. Co. (U.S.D.C. Minn.) (2004)Technology policy; Bad faith issues

Wisconsin Electric Power Company v. Allstate Insurance Company Milwaukee County Circuit Court, Milwaukee, Wisconsin # 02-CV009402 (2005) Late Notice and prejudice issues

Shepard Management Service v. Admiral Insurance Co. (California) Los Angeles Co. Superior Court LA BC328805. (Bad Faith under employment practices liability insurance policy.) (2006)

Salvation Army v. Continental Casualty Ins. Co. (Bad faith under CGL-LA Superior Court-2006) (2006)

4

Christian Builders inc. v. Cincinnati Insurance Company, U.S.D.C. District of
Minnesota, Excess Judgment Bad faith Case (2006)

1215 Pine Street Partnership v. Travelers. Ins Co.; Fed Dist Court (Missouri)
(2006)

P.R. Mallory v American States et.al (Radio Materials) (Indiana)2007
Environmental pollution; insurance coverage and bad faith issues

Thomas and Betts v. Travelers; New Jersey 2007; Insurance coverage and bad
faith

Brown Group Retail, Inc. v. Allstate Ins. Co, et.al. ( Fed. Dist Ct. Denver Co.
2007) Insurance Coverage

Premark International v. Liberty Mutual Ins. Co et. al ( Circuit Court Cook County,
Il 2007) Corporate designee

Atlas Office Supplies and Equip. Co. Inc. v. American States Ins. Co. et.al.
Marion Superior Court, (Indiana 2008)

Honda Lease Trust v. Middlesex Ins. Co. (U.S. Dist. Ct. Conn.) Bad Faith.
Excess Insurance issues

Sompo Japan Ins. Co. of America v. Amarillo Hardware Co. and California
Hardware Co. (Potter Co. Texas) June 5 and 6, 2008  Corporate designee
deposition

California Hardware v. Sompo Japan Ins. Co of America (San Bernadino County
Sup. Ct.) (June 5 and 6, 2008) PMK Deposition, California

Truck Insurance Exchange v. Kaiser Cement and Gypsum Corp and related
cross actions (Los Angeles Co Sup. Ct.) April 2009

Soco West v. Cont. Cas. Ins. Co. (U.S.D.C. Cent. Dist. Calif.) September 2009

Gast v. Travelers ( U.S.D.C. West. Dist. Michigan) November 2009

Hinkle v. Crum & Forester Group et.al.( U.S.D.C. Alaska. Anchorage) March
2010


**Trial Testimony**

Mr. Cormack was called as an expert witness in the following trials:

5

<u>Atlas Insurance Co. of America v. Newark Center Building Co.</u> Supreme Court of the State of New York, index No. 119645/95 (November 1997), and

<u>Goe Engineering Co. v. Commercial Union Insurance Co.</u>, Superior Court for the State of California, County of San Bernardino (June 1998).

<u>Harz v California Capital Insurance Company</u>, Superior Court for the State of California County of Santa Barbara, (May 2002) (Bad faith failure to defend an environmental suit)

<u>Employers Insurance of Wausau v. Tektronics, Inc.</u> Clackamas County Circuit Court, Oregon City, Oregon. (Insurance coverage and late notice issues regarding environmental claims) (August 2002)

<u>CMGI v. American Foreign Ins. Co.</u>, Essex Co. Sup. Ct. (Massachusetts) January 2005

<u>Marcia Rhodes et.al. v AIG domestic Claims Inc. fks AIG technical Services Inc.</u> et.al. Massachusetts Suffolk Co. Case No. CA#05-1360-BLS-2(2007)

6

# Exhibit "B"
## To William Cormack Report

# 2ND INSIGHT, Inc.- FEE SCHEDULE

**Exhibit B**
**(Effective May 1, 2010)**

**Hourly Rates:**

Principal Consultants: **William Cormack**
$350/hr (for general advice and investigative services);
or $400/hr (rush basis see below)

$450/hr (for expert witness testimony - 4 hour minimum
applies for each day of deposition and/or testimony) or
$500/hr rush basis

**David Frangiamore**
$350/hr (for general advice and investigative services);
Or $400/hr rush basis)

$450/hr (for expert witness services and testimony - 4
hour minimum applies for each day of deposition and/or
testimony)or $500/hour on rush basis

Secretarial: $85.00/hr
Private Investigator: $100/hr
Paralegals: $95.00/hr

**A minimum non-refundable deposit of $3000.00 is required on all cases in
which we are retained as an expert or consultant. If work is required on a
rush basis, less than 5 business days, our hourly rates are billed at 400/hr
for general advice and $500/hr for deposition and trial testimony and an
additional retainer may be required to cover the work to be performed.**

**Expenses:**

All the above referenced fees are exclusive of expenses, including but not limited
to travel, hotels, meals, mileage/car rentals, and office charges including large
scanning and copy jobs(above 20 pages) faxing, postage, and telephone. Copies
and scans and faxes are billed at 20 cents per page.

Total expenses for ordinary in house office copying, faxing, telephone, and
postage use are, not billed individually but instead are billed at the rate of 5% of
the total consulting bill.  Charges for outside copying, faxing, and telephone
conference calls, federal express, as well as other expenses are billed
separately.

We <u>do</u> charge for travel time at our agreed to rate unless we are performing
work for another client in transit in which case we do not charge travel time for
that portion of the trip.