UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NEWMONT U.S.A. LIMITED and DAWN MINING CO.,

Plaintiff,

vs.

AMERICAN HOME ASSURANCE CO., et al.,

Defendants.

NO. CV-09-0033-JLQ

**ORDER DENYING INA'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: UNAVAILABILITY OF PERSONAL INJURY LIABILITY COVERAGE**

BEFORE THE COURT is Defendant Insurance Company of North America (INA's) Motion for Partial Summary Judgment re: Unavailability of Personal Injury Liability Coverage (ECF. No. 499). Of critical import is that INA'S Motion seeks judgment as a matter of law that there is no possibility of INA's insurance policies requiring it to indemnify the Plaintiffs under the personal injury coverage part (Coverage P) for any monetary liability arising from its contamination of the land and waters on and adjacent to the Midnite Mine uranium site on the Spokane Indian Reservation in the Eastern District of Washington.

**I. FACTS**

In 2005, the United States initiated an action against Newmont Mining Corporation and Dawn Mining Company seeking to recover the costs of remediating and rehabilitating the real property on which the Defendants, pursuant to leases signed by the United States, operated an open-pit uranium mine. (E.D. Wash. CV-06-020-JLQ). The mining operations took place during a 30-40 year period. The action by the United States was initiated pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act. (CERCLA), 42 U,S.C. § 9607(a), as amended. Included in the Complaint filed by the United States were allegations that the mining activities of Dawn and Newmont resulted in the release of hazardous substances into the environment

including "metals and radionuclides in soils, sediments, surface water and groundwater, including within the drainage, surface, and sediments of Blue Creek, which flows into the Spokane River arm of Lake Roosevelt." Lake Roosevelt is part of the Columbia River which flows through the state of Washington from Canada to the Pacific Ocean. Of import to the position of INA, discussed *supra*, is that the Complaint did not use the words "trespass" or "nuisance" in describing the actions of the mining companies.

In this case, INA seeks a declaration that as a matter of law, it could never be required to indemnify the Plaintiffs for the damages sought by the United States in its CERCLA action under Coverage P even before a subsequent and ultimate factual determination by the court as to whether the Plaintiffs committed any "offenses" that would ultimately require INA to indemnify the Plaintiffs. No factual determination has been made in the underlying CERCLA action as to the nature of the specific acts by the mining companies, the ownership of the lands contaminated and impacted, the adjacent lands contaminated by ground and surface waters flowing from the mining site, and the damages incurred, either through remediation of the properties and watercourses or otherwise.

In the underlying CERCLA cost recovery action filed by the United States, EDWA Cause No. CV-05-020-JLQ, after a bench trial, the court only concluded that Newmont and Dawn were liable under CERCLA for costs incurred by the United States as of December 31, 2004 in responding to the release of hazardous substances at the Midnite Mine Site, plus pre-judgment interest (which is mandatory under CERCLA). The court also found the United States entitled to a declaratory judgment that Dawn and Newmont were jointly and severally liable for all response costs consistent with the National Contingency Plan incurred after December 31, 2004. While not necessarily determinative of the pending Motion, the actual response and remediation costs to be subsequently expended have not been determined.

During the time of the ongoing mining operations, INA issued policy no. SCG

1406 to Newmont Mining Corporation for the policy period July 18, 1980 to July 18, 1981; and policy no. SCG G0 002765-0 for July 18, 1981 to July 18, 1982; and policy no. SCG GO 209325 for July 18, 1982 to July 18, 1985. All three policies provide Coverage A for bodily injury, Coverage B for property damage and a separate and distinct Coverage P for personal injury liability which contains the following language:

> I. Coverage P – Personal Injury Liability
>
> The Company will pay on behalf of the Insured all sums the Insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization arising out of one or more of the following offenses committed in the conduct of the Named Insured's business.

The definition of the covered "personal injury" in the policies includes the following:

> ....
> Group C – wrongful entry or eviction, or other invasion of the right of private occupancy;

ECF. No. 500 at 2-3, SSOF No. 4. It is the Coverage P portion of the policies that are at issue in the pending motion.

The stated Coverage A & B portions of the policies contain a specific pollution exclusion as to those coverages, however, there is no pollution exclusion provision under Coverage P or applicable thereto. INA has not argued that the pollution exclusion provisions in Coverages A & B play any role in the Coverage P issues now before this court.

## II. LEGAL STANDARD

The court may grant summary judgment only if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) (2010). The movant bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To support an assertion that a fact either cannot be or is genuinely disputed, a party must (I) cite to "particular parts of materials in the record," (ii) show that materials in the record "do not establish the absence or presence of a genuine

dispute," or (iii) demonstrate that the adverse party "cannot produce admissible evidence" of the alleged fact. Fed.R.Civ.P. 56(c)(1) (2010). All "justifiable inferences" are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255. When the record, however, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," summary judgment is warranted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**III. ANALYSIS**

Newmont and Dawn claim INA has a duty to indemnify it for its liability incurred and declared in the CERCLA action under INA's personal injury liability (Coverage P) endorsement. INA's motion seeks a declaration by the court that the scope of its Coverage P coverage does not encompass Newmont and Dawn's liability declared in the CERCLA cost recovery action. INA asserts that under the language of Coverage P, a cost-recovery claim under CERCLA does not qualify as an "offense" enumerated therein. . Where, as here, INA contends Washington and New York law do not conflict, there is no need to engage in the choice of law analysis. Accordingly, the presumptive Washington local law applies. *Seizer v. Sessions*, 132 Wash.2d 642, 649 (1997).

The interpretation of an insurance contract is a question of law. *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 575 (1998). The court construes the policy as a whole, giving it a fair and sensible construction that would be understood by the average person. *Id*. At the same time, the court does not allow an insured's expectations to override the plain language of the contract. *Cook v. Evanson*, 83 Wash.App. 149, 155, 920 P.2d 1223 (1996), review denied, 131 Wash.2d 1016, 936 P.2d 416 (1997). If the policy language is fairly susceptible to two different interpretations, the court attempts to determine the parties' intent by examining extrinsic evidence. *American Star Ins. v. Grice*, 121 Wn.2d. 869, 874 (1993). Any ambiguity that remains will be construed against the insurer, especially if the ambiguity is in an exclusionary clause that seeks to limit policy coverage. *Id.* at 874-75.

Terms defined in a policy are interpreted in accordance with that definition. *Kitsap*

*County*, 136 Wn.2d at 576. If undefined, the terms must be given their plain and ordinary meaning. *Id.* To constitute a personal injury under the INA Coverage P the injury sustained must arise out of either a "wrongful entry" or "other invasion of the right of private occupancy." Plaintiffs concede the covered offense of "wrongful eviction" is not at play here. INA's policy does not further define "wrongful entry" or "other invasion of the right of private occupancy." ECF. No. 502, Ex. 1-3. In *Kitsap County*, the Washington Supreme Court held that in determining whether personal injury coverage exists courts must look to the type of offense that is alleged against the insured, not the nature of the injury sustained. 136 Wn.2d at 580. If the type of offense is "analogous to claims for the offenses of wrongful entry, wrongful eviction, or other invasion of the right of private occupancy then there is coverage under the personal injury provisions of the policies in question unless coverage is excluded by other provisions in the policy." *Id.* There is no exclusion clause applicable to the Coverage P in the policies for ground and water pollution.

The Washington Supreme Court *Kitsap County* case is persuasive. In that case, several landowners sued Kitsap County for trespass, nuisance and interference with use and enjoyment of their property. They claimed impairment of their health and damage to their real property from the contaminants and foul odors emanating from a waste disposal site formerly owned by the county. The 19 insurance companies that had issued personal liability policies to the county over a 30-year period declined to indemnify the county for the sums it paid to the plaintiffs in settlement. Kitsap County sought a declaration that the claims of the plaintiffs were for personal injury within the meaning of the policies. The court concluded that claims alleging trespass, nuisance and interference constituted personal liability under policies that provided coverage for personal injury arising from wrongful entry or invasion. *Id.* at 571. The court did not mandate that for coverage to exist only claims for "trespass, nuisance, and interference with the use of real property" be stated, *eo nomine.* Rather the court relied on the exact same language in the *Kitsap* policies as is found herein in Coverage P, that being: **"Group C-wrongful entry or eviction, or other invasion of the right of private occupancy"** in determining that if

the claims are "analogous to claims for the offense of wrongful entry, wrongful eviction, or other invasions of the right of private occupancy," then there is coverage. The *Kitsap* court found that the claims of trespass, ground and water contamination, and emission of foul odors brought the claims within the personal injury coverage of the policies. This court finds the claims filed against the Plaintiffs herein by the United States are analogous to trespass, nuisance, and interference with the use of private occupancy and encompassed with the stated Coverage P for claims of "wrongful entry" or "invasion of the right of private occupancy."

Further persuasive authority is the case of *Martin Marietta v. Insurance Company of North America*, 40 Cal. App. 4th 1113 (1995) involving insurance policies issued by INA that were almost identical to those issued herein. Martin Marietta claimed personal injury insurance coverage from INA and other insurers for action brought against it under CERCLA and other federal and state statutes. The claims included allegations of open pit landfills along with groundwater contamination. The California Court of Appeals analyzed the exact same language as involved herein: **"wrongful entry or eviction, or other invasion of the right of private occupancy,"** and rejected the claims of INA that contamination and pollution claims by governmental agencies under CERCLA are not within **the "other invasion of the right of private occupancy"** coverage language of the INA policies. *Id*. at 1134. The *Martin Marietta* court rejected the claims of INA that the policies did not cover statutory claims such as CERCLA and that it was thus entitled to summary judgment. This court likewise rejects INA's Motion For Partial Summary judgment, without ruling, as observed by the Washington *Kitsap County* court, 136 Wn.2d at 581,582, whether the Plaintiffs in fact committed covered offenses for which INA is obligated to provide indemnity.

///

////

/////

//////

## IV. CONCLUSION

INA's Motion for Partial Summary Judgment re: Unavailability of Personal Injury Liability Coverage (**ECF. No. 498**) is **DENIED.**

**IT IS SO ORDERED.**

The Clerk of this court shall enter this Order and forward copies to counsel for all parties.

Dated this 3rd day of March, 2011.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE